JOSÉ A. CLAVELL RUIZ ET AL., demandantes y recurridos, *v.* EL VOCERO DE PUERTO RICO, INC., y TOMÁS DE JESÚS MANGUAL, demandados y recurrentes.

*Número:* O-83-718 *Resuelto:* 24 de octubre de 1984

686

*Juan R. Marchand Quintero,* de *Rivera Cestero & Marchand Quintero,* abogados de los peticionarios; *César A. Hernández Colón,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 28 de marzo de 1981 el diario *El Vocero de Puerto Rico* publicó un artículo bajo la firma de Tomás De Jesús Mangual en que se informaba el arresto del Lic. José A. Clavell Ruiz. El artículo expresaba que la Juez R. M. Pérez le había concedido al licenciado Clavell un término de veinticuatro horas para abandonar el hogar de su esposa, "a quien supuestamente le propinó una golpiza"; que el letrado fue hallado culpable de desacato civil, pues se le había prohibido visitar a su esposa como resultado de una denuncia anterior

interpuesta por su consorte; que también fue acusado esta segunda vez por agresión, y que al efectuar su arresto, el licenciado Clavell insultó a los alguaciles, profiriendo obscenidades, teniendo que ser reducido a la obediencia. En parte del artículo se expresó:

> El Lic. Clavell, quien fuera desaforado por el Tribunal Supremo hace varios años, tras relacionársele con un "racket" de fianzas en esta ciudad [Ponce], recibió posteriormente una dispensa por el Alto Tribunal para ejercer solamente en casos notariales.

El licenciado Clavell demandó al periódico por $18,000,000, con la alegación de que la información era falsa. Por estipulación de los litigantes en la conferencia con antelación al juicio, el letrado limitó su alegación de falsedad al párrafo citado y redujo la cantidad solicitada. El resto de la noticia fue aceptada como correcta por el demandante. La parte demandada aceptó a su vez que era errónea la información relativa a que la dispensa concedida por este Tribunal se limitó al ejercicio de la notaría.[1]

El diario presentó el 9 de febrero de 1983 una moción de sentencia sumaria, acompañada de declaraciones juradas

---

[1] El licenciado Clavell fue separado indefinidamente del ejercicio de la abogacía mediante sentencia dictada el 29 de septiembre de 1977. El 13 de octubre del mismo año se reconsideró tal sentencia y en su lugar se le impuso una suspensión por el término de un año, al cabo del cual debía comparecer ante este Tribunal para solicitar su reinstalación. *In re Clavell Ruiz*, 106 D.P.R. 257 (1977).

La conducta que ameritó la referida sanción consistió en que el licenciado Clavell reiteradamente actuaba, en violación del Canon 37 de Ética Profesional, como apoderado de una compañía de fianzas, mientras que rendía servicios profesionales a acusados a quienes esa compañía les había otorgado fianzas para permanecer en libertad a prueba. Se determinó, además, que el licenciado Clavell había simulado conscientemente una compraventa, para encubrir una transacción, mediante la cual recibió una propiedad inmueble de un cliente en pago de supuestos honorarios de abogado en un caso criminal. La verdadera causa del contrato fue la de garantizar a la compañía de fianzas, de la cual era apoderado, el pago de una fianza otorgada al dueño del inmueble para permanecer en libertad provisional.

Transcurrido el término de un año fijado por este Tribunal, el licenciado Clavell solicitó ser reinstalado al ejercicio de la profesión. Su petición fue denegada, por lo que presentó una segunda moción. Finalmente, el 29 de diciembre de 1978, se ordenó su rehabilitación al ejercicio de la abogacía. *In re Clavell Ruiz*, 108

suscritas por el periodista y el Alguacil General del Centro Judicial de Ponce. El señor Alguacil General declaró en la suya que narró al periodista lo sucedido. El alguacil había suministrado información en varias ocasiones al señor De Jesús Mangual, según acostumbraba hacer con otros reporteros. El señor De Jesús Mangual lo consideraba una fuente confiable a la luz de sus experiencias pasadas. Esta vez el reportero mencionó que recordaba haber redactado una noticia sobre el desaforo del licenciado Clavell y le preguntó al alguacil sobre el particular. El señor Torres le confirmó la información y comunicó al periodista que, de acuerdo con órdenes judiciales, el licenciado Clavell no podía actuar como abogado en la corte, aunque podía ejercer la notaría.

El licenciado Clavell no contestó la moción de sentencia sumaria. El 16 de febrero de 1983 el tribunal de instancia le concedió otra oportunidad para oponerse a la moción. El demandante no presentó oposición alguna. El 5 de mayo de 1983 el tribunal le fijó un término perentorio de diez días para comparecer. El licenciado Clavell tampoco cumplió con esta resolución. Aun así, el tribunal declaró sin lugar la moción de sentencia sumaria.

El tribunal concluyó que el licenciado Clavell se convirtió en figura pública debido a la notoriedad que adquirió al ser desaforado, pero que tal condición no perduró para la fecha en que se publicó el artículo objeto del litigio. Determinó, además, que aunque el demandante no se opuso a la solicitud de sentencia sumaria, según lo requiere la Regla 36.5 de Procedimiento Civil, los autos revelaban la existencia de una controversia sobre si el periódico incurrió en negligencia al publicar que la reinstalación del demandante a la profesión legal se limitaba al ejercicio de la notaría.

---

D.P.R. 259 (1978). En este caso citamos nuestras expresiones en *In re González*, 60 D.P.R. 94, 98 (1942):

"A él corresponde, en el futuro demostrar, con sus actuaciones, que no erramos al dar crédito a la confianza en él depositada y al concederle, como le concedemos, el alto privilegio de ejercer de nuevo la profesión de abogado y notario y de llevar con honor la toga que dignifica."

El diario acudió en alzada a este foro. Dictamos orden de mostrar causa por la cual no debe revocarse la resolución recurrida y dictarse sentencia a favor de la parte recurrente. La parte recurrida ha comparecido, mas no nos persuade a variar el criterio anticipado.

## I

*El derecho aplicable*

■ La fuente principal de la protección contra la expresión difamatoria es la Constitución del Estado Libre Asociado de Puerto Rico. La Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902 (32 L.P.R.A. sec. 3141 y ss.), sobrevive tan sólo en cuanto es compatible con esa Constitución. *Cortés Portalatín* v. *Hau Colón*, 103 D.P.R. 734, 738 (1975); *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174, 180 (1978).

■ Al igual que los estados de la Unión Americana, Puerto Rico posee la facultad de establecer sus propias normas de responsabilidad por difamación, siempre que no se imponga responsabilidad absoluta o que las reglas que se adopten no reduzcan el contenido mínimo de la Enmienda Primera a la Constitución de Estados Unidos. *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 347, 349 (1974).

Sujeto a esas limitaciones familiares, es al ordenamiento jurídico de Puerto Rico al que debe acudirse para sopesar los intereses envueltos en casos de difamación. La jurisprudencia norteamericana, estatal o federal, en este campo posee, por lo demás, carácter ilustrativo o persuasivo tan sólo. Nuestra percepción de los valores envueltos y el modo de conciliarlos pueden ser enteramente distintos. Esta situación no es particular de Puerto Rico. Comentario, *Defamation and State Constitutions: The Search for a State Law Based Standard after Gertz*, 19 Willamette L. Rev. 665 (1983).

## II

*El marco conceptual e histórico*

■ Dos preceptos constitucionales de nuestro ordenamiento jurídico enmarcan el derecho de difamación: la

cláusula del Art. II, Sec. 4 que dispone que "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa..." y la disposición del Art. II, Sec. 8 al efecto que "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar".(²) *Cortés Portalatín* v. *Hau Colón,* supra, pág. 738. La legislación no es indispensable como condición al ejercicio de estos derechos. *Alberio Quiñones* v. *E.L.A.,* 90 D.P.R. 812 (1964).

■ En varias circunstancias los valores encarnados en estas disposiciones constitucionales confligen. Los casos de difamación plantean esencialmente la necesidad de determinar el peso respectivo del interés en una ciudadanía debidamente informada, en fomentar el debate vigoroso sobre cuestiones de interés público, de un lado, y el derecho a la intimidad, del otro. *Torres Silva* v. *El Mundo, Inc.,* 106 D.P.R. 415, 420 (1977). Esta labor afecta en el fondo la aplicación de las mecánicas de pesaje establecidas a su amparo.

En tiempos de la Convención Constituyente hubo intentos de pormenorizar y consignar circunstancias en que determinado valor prevalecería sobre el otro. Así, por ejemplo, doce años antes de *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), mas yendo mucho más allá de lo allí establecido, se propuso distinguir entre funcionarios públicos y privados, al prohibir en forma absoluta la imposición de responsabilidad civil o criminal "por libelo o calumnia consistente en manifestaciones escrita[s] u orales relativas a un funcionario público...". Prop. Núm. 35. La Convención Constituyente no acogió la propuesta, y dejó a otros procesos la dilucidación de los conflictos entre las dos series de valores.

■ Ello llevó a la adopción de diversos métodos para resolver la tensión entre la libertad de palabra y el derecho a

---

(²) Un gran número de constituciones extranjeras modernas reconocen también el derecho a la intimidad. F. X. Beytagh, Jr., *Privacy in Perspective: The Experience under Foreign Constitutions,* 15 U. Tol. L. Rev. 449 (1984).

la intimidad en diferentes situaciones. El derecho norteamericano fue fuente de valiosos préstamos jurídicos sobre el particular. (³) Se distinguió así en Puerto Rico entre funcionarios públicos y otros ciudadanos. El funcionario público no puede ser indemnizado por daños a su reputación a menos que demuestre que la publicación se efectuó con malicia real, a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Torres Silva* v. *El Mundo, Inc.*, 106 D.P.R. 415, 421 (1977); *Zequeira Blanco* v. *El Mundo, Inc.*, 106 D.P.R. 432, 435 (1977).

La norma relativa a los funcionarios públicos se aplica también a las figuras públicas. *Aponte Martínez* v. *Lugo*, 100 D.P.R. 282, 293 (1971); *Torres Silva* v. *El Mundo, Inc.*, supra, pág. 422; *García Cruz* v. *El Mundo, Inc.*, supra; *Pueblo* v. *Olivero Rodríguez*, 112 D.P.R. 369 (1982). El caso de autos trata fundamentalmente de este concepto y el impacto del transcurso del tiempo sobre su definición.

## III

*La figura pública y el transcurso del tiempo*

En varias sentencias hemos señalado rasgos peculiares de la figura pública. *Torres Silva* v. *El Mundo, Inc.*, supra; *Pueblo* v. *Olivero Rodríguez*, supra, pág. 374. Para el debido entendimiento y aplicación de estos rasgos hay que recordar que términos como "figura pública" constituyen modos taquigráficos de intentar representar grupos de ideas o conceptos más amplios. La aplicación a una persona de la etiqueta de "figura pública" significa, a fin de cuentas, que para prevalecer en un pleito de difamación se le someterá a un criterio más riguroso de prueba, que su derecho a la

---

(³) Sobre el tema de estos y otros préstamos vale recalcar, en términos generales, que el trasplante de figuras o conceptos jurídicos de una sociedad a otra o aun dentro de una misma sociedad de contextura tan variada y compleja como la de Estados Unidos no acarrea la generalización de un solo enfoque. Textos idénticos pueden tener significados muy distintos en comunidades diferentes. Nota, *Private Abridgment of Speech and the State Constitution*, 90 Yale L.J. 165 (1980).

intimidad pesa menos que el derecho de otros a la libre expresión, a menos que demuestre la existencia en éstos de malicia real. Las razones que apoyan la definición de "figura pública" están inexorablemente ligadas a los valores que informan el derecho de la responsabilidad por difamación. El proceso de decisión se complica a la luz del reconocimiento en Puerto Rico y fuera de aquí del hecho de que existen muchas clases de figuras públicas, entre ellas aun la de la persona que se convierte involuntariamente en personaje público. *García Cruz* v. *El Mundo, Inc.*, supra, págs. 178–179.

En *Torres Silva* v. *El Mundo, Inc.*, supra, pág. 422, expresamos:

> El fundamento racional de la dicotomía figura pública-privada consiste en que la figura pública, por lo general, goza de un acceso mayor a los medios de comunicación para refutar la publicación difamatoria y contrarrestar su efecto. Además, se asume [*sic*] que la figura pública se ha expuesto voluntariamente al riesgo de un juicio más riguroso por el público. Pero tal asunción [*sic*] no se justifica en el caso de las figuras privadas que no se han lanzado a la palestra pública y cuyo interés en la reputación personal no ha sido menguado por ninguna actuación voluntaria de su parte.

En otras palabras, la figura pública es persona investida de mayor interés comunal. Tiene acceso a la luz pública y ésta a su vez legítimamente alumbra algunas de sus actuaciones y dichos. Los líderes y otras personas destacadas de la sociedad no son las únicas personas identificables como figuras públicas. Un ciudadano privado puede adquirir la notoriedad necesaria para que, por las razones expresadas en nuestra jurisprudencia, el bienestar general exija que prevalezca el derecho a la libertad de expresión.

■ Dentro de los principios establecidos en este foro, el caso de autos no representa dificultad alguna sobre la clasificación del licenciado Clavell como figura pública para el tiempo que este Tribunal lo desafora y más tarde lo reinstala al ejercicio de la profesión legal. Hasta aquí coincidimos con

la ilustrada sala de instancia. Diferimos, no obstante, de la conclusión que el licenciado Clavell había perdido esa condición para el tiempo en que se publicó la noticia que motivó este pleito. Veamos en más detalle los hechos referentes al licenciado Clavell, algunos de los cuales no constan en autos mas pueden ser objeto de conocimiento judicial según la Regla 11 de Evidencia.

El licenciado Clavell estuvo desaforado desde el 29 de septiembre de 1977 hasta el 29 de diciembre de 1978. La formulación de la querella que culminó en el referido desaforo fue ordenada por este Tribunal el 7 de marzo de 1975. La acción contra el querellado fue objeto de publicidad.

Estos hechos de por sí convirtieron por un tiempo al licenciado Clavell en figura pública. Desde la rehabilitación del licenciado Clavell al ejercicio de la abogacía el 29 de diciembre de 1978 hasta la publicación alegadamente difamatoria de 18 de marzo de 1981 trascurrieron dos años y casi tres meses. Para determinar si ello fue suficiente para sumergir nuevamente a la parte recurrida en la categoría de ciudadano privado consideremos otros hechos.

La notoriedad que adquirió el licenciado Clavell no se limita a los hechos de legítimo interés público que conllevaron su desaforo en 1977. El licenciado Clavell se vio envuelto, además, en los procedimientos judiciales iniciados en junio de 1975 con relación a la herencia de Isabel Luberza Oppenheimer, conocida como "Isabel la Negra". Tales procedimientos recibieron amplia cobertura en la prensa del país. La conducta del licenciado Clavell en tal asunto y otros provocó la presentación de un informe preliminar el 29 de diciembre de 1977 en que la Administración de los Tribunales recomendó que el expediente se sometiese a la consideración de un magistrado de este Tribunal para la determinación de causa probable. El 22 de octubre de 1981 este Tribunal resolvió, en vez de eso, remitir el asunto al señor Procurador General de Puerto Rico "para que éste, previa reinvestigación y corroboración, rinda un informe a este foro

contentivo de sus recomendaciones al respecto". El 28 de junio de 1983 la Oficina del Procurador General rindió el informe solicitado y el 20 de octubre de 1983 este Tribunal ordenó la presentación de una nueva querella contra el licenciado Clavell. El procedimiento aún sigue su curso.

Los hechos reseñados revelan que el licenciado Clavell no ha cesado de ser figura pública. Desde 1975 el letrado recurrido ha sido foco de atención periodística (véase su moción de 21 de marzo de 1984 en que solicita la paralización del caso pendiente sobre conducta profesional). Los autos no demuestran que su notoriedad haya disminuido o menguado su acceso a los medios de comunicación. En la referida moción de 21 de marzo de 1984 el licenciado Clavell expresa que "[s]on innumerables (más de 25) los informes periodísticos durante el proceso . . .". El licenciado Clavell añade que en ocasiones acudió a los medios noticiosos para aclarar informaciones alegadamente falsas o expresar una opinión a requerimiento de los propios medios. Finalmente, la publicación de que se queja el demandante tiene que ver con sucesos provocados por su propia conducta.

El licenciado Clavell ha retenido su condición de figura pública. En *García Cruz* v. *El Mundo, Inc.*, supra, pág. 179, establecimos, aun en ausencia de circunstancias adicionales que atrajeran la atención pública a una persona, que determinada conducta puede estar revestida de suficiente interés general como para mantener a esa persona por determinado tiempo en la categoría de persona pública. En *García Cruz* v. *El Mundo, Inc.*, supra, el tiempo transcurrido fue únicamente tres meses, período que consideramos insuficiente para devolver al demandante a la vida privada. Cada caso deberá resolverse a la luz de sus circunstancias específicas.

Por vía de ilustración tan sólo, pueden citarse muchas sentencias en que el período de retención ha sido considerablemente mayor que el término envuelto aquí. En *Times, Inc.* v. *Johnston,* 448 F.2d 378 (4th Cir. 1971), se criticó la habilidad de un jugador de baloncesto nueve años después de

su retiro como jugador y doce años después de haber ocurrido los eventos mencionados en la publicación. Se resolvió que retenía su condición de figura pública. En *Brewer* v. *Memphis Pub. Co., Inc.*, 626 F.2d 1238 (5th Cir. 1980), el tiempo transcurrido fue de diez años; en *Street* v. *National Broadcasting Co.*, 645 F.2d 1227 (6th Cir. 1981), apelación desestimada por estipulación, 454 U.S. 1095 (1981), el período fue de cuarenta. Véanse: Comentario, *Public Figures and the Passage of Time: Scottsboro Revisited in Street v. National Broadcasting Co.*, 34 Stan. L. Rev. 901 (1982); Comentario, *Public Status over Time: A Single Approach to the Retention Problem in Defamation and Privacy Law*, U. Ill. L. Rev. 951 (1982); Nota, *Defamation Law: Once a Public Figure Always a Public Figure?*, 10 Hofstra L. Rev. 803 (1982); Nota, *Public Figures and the Passage of Time*, 39 Wash. & Lee L. Rev. 1327 (1982).

 Los casos citados tienen un hilo común. La reclamación en ellos surgió de la inexactitud de informaciones sobre hechos que atrajeron inicialmente la atención pública hacia la parte demandante. Tal fue el caso presente. Este factor es merecedor de gran peso para determinar el papel del devenir del tiempo sobre el criterio —malicia real o negligencia— que habrá de juzgar una publicación determinada. El criterio de malicia real claramente controla el caso presente.

IV

*La procedencia de la sentencia sumaria*

 Nuestra jurisprudencia establece que procede la sentencia sumaria cuando el demandante no demuestra la existencia de malicia real. Tal demostración requiere prueba clara y convincente. No basta con la mera afirmación en la demanda de que la publicación fue maliciosa. El procedimiento de sentencia sumaria es una parte integral de la protección constitucional disponible a los demandados en este género de litigio. *García Cruz* v. *El Mundo, Inc.*, supra;

*Zequeira Blanco* v. *El Mundo, Inc.*, supra; *Torres Silva* v. *El Mundo, Inc.*, supra.

El demandante en este caso se limitó a expresar conclusiones generales en la demanda. Más aún, al presentar la parte demandada su solicitud de sentencia sumaria, el licenciado Clavell no interpuso oposición a pesar de que el tribunal de instancia le instó a ello en dos ocasiones. Vistas las disposiciones de la Regla 36.5 de Procedimiento Civil, debe concluirse sumariamente que no se probó que la publicación obedeciese a la requerida malicia real.

Por las condiciones expuestas, *se revocará la resolución recurrida y se dictará sentencia sumaria a favor de la parte demandada.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.