Walter **PIERLUISSI**, Plaintiff,

v.

**COOPERVISION PHARMACEUTICALS, INC., Carlos A. Rodriguez, Norberto Toledo, Defendants.**

**No. Civ. 84–2113CC.**

United States District Court,
D. Puerto Rico.

Sept. 7, 1988.

Gerardo Mariani, Woods & Woods, Hato Rey, P.R., for plaintiff.

Rossell Barrios–Amy, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz–Suria, San Juan, P.R., for defendants.

OPINION AND ORDER

CEREZO, District Judge.

This action for libel, filed pursuant to 28 U.S.C. Section 1332, is before us on cross-motions for summary judgment. The facts which gave rise to the case are as follows:

Plaintiff Pierluissi was the purchasing manager of CooperVision Pharmaceuticals, Inc. On August 29, 1983, Pierluissi was notified of his termination from employment by his supervisor, defendant Carlos Rodríguez. According to plaintiff's own deposition testimony, he was called into Rodríguez' office and was presented a memorandum which read as follows:

MEMORANDUM    CONFIDENTIAL    COOPERVISION
San Germán, Puerto Rico

To: Walter Pierluissi          cc J.J. Snyder
From: Carlos A. Rodríguez         N. Toledo
Date: August 29, 1983             R. Frontera
Subject:

After a very careful analysis, CooperVision Pharmaceuticals, Inc.'s management has decided to terminate your employment with this company.

Among other reasons for this decision we have found total absence of loyalty in your dealings with your employees. You have personally admitted that you met with your subordinates to alert them that a case was being built to fire them as it was done before with another employee. The information you passed on to your employees was totally false, and under no circumstances can we permit this type of situation to happen.

As you can understand our company can not [sic] trust employees with this lack of loyalty. In your position you deal with highly confidential information.

Anything you may say, true or false, will be seen by our employees as it was coming from top management.

Having you admitted the fact you met with your subordinates leaves us with the only alternative to terminate your employment immediately.

CAR:

CARLOS A. RODRIGUEZ

---

The persons to whom the copies were sent were codefendant Norberto Toledo, Vice President of Finance and Administration of CooperVision; James Snyder, President and General Manager of the company; and Raul Frontera, the Personnel Manager. The memo came about as a result of the decision to discharge Pierluissi which was made by Toledo, Snyder and Rodríguez during a meeting a few days earlier. The disloyalty referred to in the memo allegedly occurred at a meeting which Pierluissi had held with the employees in his department. Pierluissi allegedly told them that the company was in the process of building cases against them to discharge them, as had previously happened with another employee. Rodríguez stated that after another employee, Alba Pabón, told him of the meeting, he confronted the plaintiff with the accusation of disloyalty and Pierluissi admitted the facts. Rodríguez then brought the matter to the attention of the others, and the decision to terminate was made by the three of them. Frontera was not included in the decision-making process because he was leaving the company shortly.

As a result of his discharge, the plaintiff filed two lawsuits in the District Court of Puerto Rico. The first of these was initiated in January 1984 claiming indemnization for wrongful discharge under Puerto Rico Law 80 of May 30, 1976 while this defamation action was filed in August 1984. The defamation complaint is based on "reckless, malicious publication of false information regarding plaintiff's lack of loyalty," which he alleges caused "irreparable damage to his reputation as a reliable, dedicated and trustworthy employee."

Plaintiff's motion for summary judgment emphasizes his good work record, the fact that no complaints had ever been raised about him before, that he was not given a meaningful opportunity to explain what happened at the meeting with his subordinates, and that the officers' "careful analysis" was anything but that. He concludes his legal argument with the following summation:

> Plaintiff, a professional with an excellent standing in his trade, and with an excellent record in the Company he worked for, was irrevocably dismissed from his position, and they based such dismissal in what one Alba Pabón, plaintiff's temperamental subordinate, informed plaintiff's supervisor. Plaintiff's supervisors did not investigate Miss Pabón's allegations and act with reckless disregard against plaintiff.
>
> A termination memorandum followed, stating that plaintiff had been disloyal to the Company. This memorandum drafted by plaintiff's supervisor, and *circulated among other top executives* at CooperVision, is sufficient to establish a prima facie case of defamation against the defendants. The qualified immunity that covered such act, was lost due to the reckless disregard that defendants observed towards plaintiff. The least defendants could have done was to further investigate Miss Pabón's allegations against plaintiff. (Emphasis ours.)[1]

Defendants' motion for summary judgment is based upon a premise not addressed by the plaintiff and central to a claim of libel: Did the defendants publicize the contents of the memorandum or "publish" the memorandum itself. It is the defendants' primary contention that the allegedly defamatory statements were never made public, so that no defamation, by definition ever took place.

The principal source of protection against defamation arises from Puerto Rico's Constitution. *Clavell Ruiz v. El Vocero de P.R.*, 115 D.P.R. 685, 690 (1984); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 738 (1975). Section 8 of Article II establishes that "Every person has the right to the protection of law against abusive attacks on his honor, reputation, and private or family life."

The Libel and Slander Statute of 1902, 32 L.P.R.A. Sections 3141–3149, which provides for a civil action for damages, defines libel as:

> The malicious defamation of a person made public by writing, ... tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt, or dishonor upon him....

32 L.P.R.A. Section 3142.

To create liability for defamation there must be:

a) a false and defamatory statement concerning another;

b) an unprivileged publication to a third party;

c) fault amounting at least to negligence on the part of the publisher;

d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Restatement, Second, Torts*, Section 558.

Under Puerto Rico law, malice shall not be presumed in communications "between persons having business in partnership, or other similar associations." 32 L.P.R.A. Section 3145. This condition embodies conditional or qualified priviledge for communications made under specific circumstances. *Vargas v. Royal Bank of Canada*, 604

---

F.Supp. 1036, 1043 (D.P.R.1985); *Chico v. Editorial Ponce, Inc.*, 106 D.P.R. 759, 768 (1973); *Díaz v. Puerto Rico Railway Light and Power Co.*, 63 P.R.R. 776 (1944).

Courts have even found that the transmission of an alleged defamatory memorandum from one employee of the defendant to another amounted to nothing more than "the corporation, through its agents, talking to itself." *See Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 289 (8th Cir.1982); *L. Cohen & Company, Inc. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1425 (D.Conn.1986). Thus, the question is raised as to whether there was a publication to third parties or actual malice.

It appears from the documents that copies of the memorandum were sent only to Snyder, Toledo, and Frontera. In his deposition testimony, Pierluissi acknowledges that Rodríguez gave him the memo behind closed doors, with no one else present. Although he stated that as a result of the statements he was unable to find other employment, when pressed on this point, plaintiff acknowledged that he did not know of anyone who had ever been given any kind of reference regarding his employment at CooperVision. Likewise, Pierluissi doubted that anyone besides the officials had knowledge of the contents of the memo before he filed the complaint. When asked why he believed that the action taken by CooperVision resulted in his employment difficulties, Pierluissi stated that people were calling him to find out *why* he had been summarily discharged. Thus, it appears that his difficulties may have arisen from the general fact of his discharge, rather than the contents of the memorandum. If anything, the inquiry as to motive supports the position that the statements were not publicized beyond the copies to the officers.

It is our understanding that copies of the memorandum written pursuant to the termination decision, sent to the other executives who participated in the decision-making process and to the personnel officer, fall within the necessity of the company procedures and the grant of the priviledge, and cannot be presumed to be characterized as malicious or recklessly negligent.

Defendants also note the fact that plaintiff's inability to prove publication to prospective employers or third parties means, *a fortiori*, that there is no proof of a causal relationship between the alleged damages suffered by plaintiff and the memorandum of defendants.

It is clear from the allegations of the complaint that plaintiff bases his damages on publication to outsiders and potential employers.[2]

There being no evidence of publication to third parties, it can reasonably be concluded that the damages claimed by plaintiff

---

2. We quote the pertinent paragraphs from the complaint:

7. Defendants knew, or should have known, that the negligent and reckless publication and circulation of the aforementioned libelous material of and concerning the Plaintiff, without first ascertaining the accuracy or truthfulness of such material, would ineluctably deprive Plaintiff of the respect, confidence and trust of potential employers and would have the disastrous effect of denying the Plaintiff the opportunity of obtaining employment with any other employer, particularly in Puerto Rico where his services had heretofore been in demand.

8. Defendants, with reckless disregard for the truth or falsity of the above-mentioned notice and its libelous material, maliciously published and circulated copies thereof to members of defendants' staff, who like the Plaintiff, were well known to buyers, purchasing agents and other management officials of the various industrial firms operating in Puerto Rico.

9. That as a direct result of the reckless, malicious publication of the false information regarding Plaintiff's lack of loyalty which, particularly in Plaintiff's occupation, is considered by employers as an indispensable trait in prospective employees, the Plaintiff has been unable to obtain employment in his specialized field in Puerto Rico or in the United States despite the fact that he has repeatedly applied for jobs that have been vacant in his area of specialization, including many of which were at a considerably lower level of responsibility than his most recent position. 10. That by reason of the reckless, malicious publication of the abovementioned libelous material, Plaintiff has suffered irreparable damage to his reputation as a reliable, dedicated and trustworthy employee and as a direct consequence, has been unemployed since August 20th 1983, which circumstance has required Plaintiff to exhaust his life's savings to defray his and his family's living expenses. 11. By reason of the reckless, malicious publication of the said libelous information and

were caused by the fact of his discharge. We note once again that plaintiff brought his action for unlawful discharge in the District Court of Puerto Rico. The Court found in his favor and awarded him the liquidated damages authorized by law.

The Supreme Court has held that a motion for summary judgment filed by defendant should be granted where it is evident that there is an absence of evidence to prove an essential element of the plaintiff's claim. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also Stepanischen v. Merchant Despatch Corp.*, 722 F.2d 922 (1st Cir.1963). Under the conditional priviledge for intracorporate communications, malice must be proven by plaintiff in order to recover damages. *See Vargas, supra*, at 1043; *Quiñones v. J.T. Silva Banking and Commercial Co.*, 16 P.R.R. 661 (1910). Plaintiff has failed to show malice in terms of the communication from Rodríguez to Snyder, Toledo and Frontera. Likewise, Pierluissi's contentions of communication to others, including possible employers,[3] and ensuing damages are purely speculative.

For the above-stated reasons, we hold that plaintiff has failed to convince the Court that it could prove at trial that the allegedly defamatory statement was published and that as a result of the publication he suffered damages. Therefore, the plaintiff's motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED. Judgment DISMISSING the action will be entered.

SO ORDERED.

the inevitable consequences of his inability to earn a living, Plaintiff has sustained inestimable injury to his good name, professional esteem and credit standing and has suffered great embarassment and humiliation as well as mental pain and anguish to such extent as to cause him an emotional disorder that has required psychiatric treatment under the auspices of the Veterans Administration, in Orlando, Florida.

12. As a consequence of the above—his psychiatric impairment direclty and/or indirectly caused by defendants' reckless and malicious acts—Plaintiff has also been deprived of salaries in the amount of $33,000.00 based on his monthly salary since the last day of employment.

3. Pierluissi's allegations of damages stem from his contention that publication injured his ability to get another job and earn a living.