Feliciano Acevedo, Juez Ponente
*1051 TEXTO COMPLETO DE LA SENTENCIA
Acude ante nos St. Mary's School, Inc. ("St. Mary's”) mediante un recurso de apelación en el que solicita la revisión y revocación de un dictamen sumario emitido por el Tribunal de Primera Instancia, Sala Superior de San Juan (Hon. Carmen Rita Vélez Borrás, Juez). Mediante éste, dicho foro dispuso de una demanda de daños y perjuicios y solicitud de orden de injunction permanente incoada por la aquí apelante, imponiendo a ésta el pago de costas y honorarios de abogado. Luego de atender detenida y cuidadosamente la comparecencia de las partes, así como el derecho aplicable, resolvemos que el tribunal inferior dictaminó correctamente, por lo que procede confirmar la sentencia recurrida.
I
El 18 de marzo de 1996, St. Mary's instó una acción en daños y perjuicios contra la Asociación de Residentes de la Urbanización Sagrado Corazón ("Asociación") y varios de sus miembros en su carácter personal por alegado abuso de los procedimientos y persecución maliciosa. En la misma alegó que los demandados habían instado varios procedimientos ante agencias gubernamentales con el único propósito de menoscabar su estabilidad financiera y obligarla a cerrar sus facilidades. Asimismo, alegó que los demandados habían realizado manifestaciones libelosas y difamatorias ante las agencias y en los periódicos. Solicitó además la expedición de un injunction permanente ordenando a los demandados abstenerse de efectuar tales actos y manifestaciones. El 31 de mayo de 1996, St. Mary's presentó "Demanda Enmendada", la cual fue oportunamente contestada por los demandados.
El 30 de julio de 1996, la parte demandada solicitó se dictara sentencia sumaria. En la misma alegó que en la demanda no existe alegación fáctica que configure alguna de las causas de acción invocadas, por lo que, como cuestión de derecho, la misma no aduce hechos que justifiquen la concesión de un remedio. Luego de atender la posición de ambas partes, el tribunal de instancia acogió dicha solicitud y emitió, el 11 de diciembre de 1996, el dictamen aquí impugnado. Al así dictaminar, dicho foro concluyó que la concesión del remedio de injunction solicitado constituiría una censura previa, lo que menoscabaría la libertad de expresión de los demandados. Determinó, además, que en el presente caso no se configuran las causas de acción por persecución maliciosa y abuso de los procedimientos. También concluyó que procedía desestimación de la reclamación por difamación, ya que la demanda "no aduce hechos que justifiquen la concesión de un remedio". Al respecto, señaló que "La demandante no describió, en su demanda, las alegadas expresiones difamatorias, la fecha en que éstas se hicieron o se publicaron ni el autor de las mismas". Sentencia apelada, a la pág. 15, Apéndice del Recurso, a la pág. 97. El archivo de la copia de la notificación de la sentencia se realizó el 19 de diciembre de 1996.
Inconforme, acude ante nos St. Mary's, mediante la oportuna interposición del recurso que nos ocupa. En el mismo imputa, como fundamentos de revocación, que el foro inferior incidió al concluir que la acción instada constituye una censura previa contra los demandados, al resolver por vía sumaria *1052 que no hubo abuso de los procedimientos, y al determinar que no se estableció un caso prima facie de difamación. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver las controversias presentadas.
II
Para la mejor comprensión del recurso ante nos, iniciemos con la consideración del trasfondo fáctico del caso.
St. Mary's es una corporación organizada al amparo de las leyes del Estado Libre Asociado de Puerto Rico dedicada desde 1988 a operar una institución educativa con el mismo nombre ubicada en la calle San Javier de la urbanización Sagrado Corazón, en Río Piedras. Inicialmente dicha institución era una escuela maternal. En 1989 St. Mary's solicitó, y obtuvo, de la Administración de Reglamentos y Permisos ("ARPE") la autorización para operar en dichas facilidades, además de la escuela maternal, una escuela elemental.
En el mismo año, la Autoridad de Carreteras de Puerto Rico incoó ante el antiguo Tribunal Superior de San Juan una demanda de expropiación forzosa contra St. Mary's. Dicha agencia interesaba adquirir la titularidad del predio de terreno en que ubicaba el estacionamiento de la escuela como parte de los terrenos necesarios para la construcción de la Ave. Ing. Víctor Labiosa. El 30 de octubre de 1991, dicho tribunal dictó sentencia transfiriendo la titularidad del terreno a la agencia. Debido a la ausencia de estacionamiento, los padres y madres de los estudiantes de dicha escuela comenzaron a utilizar las aceras para estacionarse al llevar y recoger a los estudiantes.
El 10 de septiembre de 1992, la Asociación solicitó al Municipio de San Juan la autorización para establecer el sistema de 'control de acceso', con el fin de regular el flujo de tránsito y visitantes en su urbanización. El 17 de octubre de 1993, dicho municipio autorizó preliminarmente el cierre de la urbanización. Tal autorización requería que el tránsito se controlara mediante un portón electrónico en la calle San Gerardo y un brazo mecánico en la calle San Javier. Esta última es la vía de acceso a la entrada principal de las urbanizaciones Sagrado Corazón, El Vigía y La Alborada. En la misma se encuentra, además, la única entrada al plantel escolar de St. Mary's. Esto, sumado a la situación originada por la falta de estacionamiento, provocó serias congestiones vehiculares.
Ante tal situación, un grupo de residentes de las urbanizaciones mencionadas realizaron gestiones ante diversas agencias expresando su oposición a la ubicación de la escuela. Entre otras, la Asociación solicitó ante ARPE la revocación del permiso de uso concedido a St. Mary's. Dicha solicitud fue denegada mediante resolución de 22 de enero de 1993. No obstante, dicha agencia alteró los términos del permiso de uso concedido a la apelante, limitando el número de estudiantes a 155 y requiriendo la eliminación de algunos salones. Inconforme, la Asociación apeló el dictamen ante la Junta de Apelaciones y Construcciones. Esta confirmó la determinación de ARPE, y modificó el número de personas permitidas en el plantel a 249.
El 27 de octubre de 1994, Pilar García Gómez, miembro de la Asociación, presentó ante ARPE una querella alegando que la demandante-apelante no había tomado las medidas necesarias para cumplir con las modificaciones al permiso de uso antes mencionadas. Luego de la investigación de rigor, la agencia informó a las partes que de hecho St. Mary's estaba operando en contra de las aludidas modificaciones.
Posteriormente, St. Mary's anunció en el periódico que se ofrecerían cursos hasta el octavo grado. Así las cosas, Rosaida Torres, también miembro de la Asociación, presentó el 24 de abril de 1995 otra querella ante ARPE, alegando que St. Mary's operaba en contravención al permiso de uso que le fuera concedido. De la investigación realizada se concluyó que St. Mary's estaba violando el permiso de uso porque ofrecía cursos hasta el octavo grado, a pesar de que el referido permiso sólo le autorizaba a ofrecer cursos hasta el sexto grado, y porque tenía una matrícula de 300 estudiantes cuando sólo se le autorizó una matrícula máxima de 150. A pesar de ello, para el año escolar siguiente la demandante-apelante aceptó estudiantes desde el jardín de infantes ("Kindergarten") hasta el octavo grado.
Como parte de las protestas realizadas por la Asociación, un grupo de residentes efectuó una *1053 demostración pacífica en el área cercana a la escuela. Además, algunos de los residentes enviaron cartas al periódico El Nuevo Día, indicando el peligro que constituia el que la escuela no tuviera un área de estacionamiento.
III
La sentencia sumaria es un mecanismo procesal extraordinario y discrecional que tiene el propósito de aligerar la tramitación de un caso. PFZ Properties v. General Accident Insurance Co., Opinión de 7 de septiembre de 1994, 136 D.P.R. _ (1994), 94 J.T.S. 116, pág. 125. El mismo permite dictar sentencia sin celebrar la vista en los méritos del caso cuando "las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho procede dictarse sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse, además, Sotomayor v. American International Ins. Co., Opinión de 28 de octubre de 1994, 132 D.P.R. _ (1994), 94 J.T.S. 132, pág. 311; PFZ Properties, Inc. v. General Accident Insurance Co., supra; González v. Alicea, opinión de 4 de febrero de 1993, 133 D.P.R. _ (1993), 93 J.T.S. 16, pág. 10380; Mercado Vega v. U.P.R., 128 D.P.R. 273, 281 (1991); J. A. Cuevas Segarra, Práctica Procesal Puertorriqueña: Procedimiento Civil, San Juan, Publicaciones JTS, 1985, pág. 182; y R. Hernández Colón, Derecho Procesal Civil, San Juan, Michie, 1997, pág. 205. En cambio, no procede dictar sentencia sumaria cuando exista controversia en relación con los hechos materiales del caso. Cualquier duda deberá resolverse en contra de la parte promovente. Bonilla Medina v. P.N.P., Opinión de 13 de marzo de 1996, 140 D.P.R. _ (1996), 96 J.T.S. 33, pág. 790.
Aunque dicho mecanismo va dirigido a promover la economía procesal, su "objetivo fundamental sigue siendo obtener una solución justa". Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990). Por ello, la utilización de dicho mecanismo no puede poner en peligro o menoscabar los intereses y derechos de las partes. PFZ Properties v. General Accidente Insurance Co., supra.
Corresponde a la parte que solicita la sentencia sumaria demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. Worldwide Food Distributors v. Colón Bermúdez, Opinión de 30 de junio de 1993, 133 D.P.R. _ (1993), 93 J.T.S. 114, pág. 10966; J.A.D.M. v. Centro Comercial Plaza Carolina, Opinión de 19 de febrero de 1993, 132 D.P.R. _ (1993), 93 J.T.S. 26, pág. 10439; Rivera Santana v. Superior Packaging, Inc., Opinión de 9 de diciembre de 1992, 132 D.P.R. _ (1992), 92 J.T.S. 165, pág. 10165; Cuadrado Lugo v. Santiago Rodríguez, supra. La moción de sentencia sumaria deberá ir acompañada de documentos que avalen los hechos que sustentan la posición de la parte que la solicita. Colegio de Ingenieros y, Agrimensores v. A.A.A., Opinión de 21 de octubre de 1992, 131 D.P.R. _ (1992), 92 J.T.S. 137, pág. 10025. A tenor, la parte promovente puede en apoyo de su solicitud acompañar la moción con declaraciones juradas, documentos u otro tipo de evidencia admisible, o plantear cuestiones de estricto derecho que no ameriten declaraciones juradas, tales como cosa juzgada, exoneración, pago, aceptación en finiquito, prescripción, etc. Zachry International v. Tribunal Superior, 104 D.P.R. 267, 271 (1975); Roth v. Lugo, 87 D.P.R. 386, 397-398 (1963). El propósito "cuando exista o surja una aparente controversia de las mismas, en realidad tal controversia no existe." R. Hernández Colón, supra, pág. 208. Cfr. J. A. Cuevas Segarra, supra, pág. 189.
De igual forma, para derrotar una solicitud de sentencia sumaria la parte opositora no puede cruzarse de brazos y descansar en sus alegaciones, sino que debe presentar declaraciones juradas o documentos que controviertan los hechos presentados por el promovente. PFZ Properties v. General Accident Insurance Co., supra; Cuadrado Lugo v. Santiago Rodríguez, supra; J. A. Cuevas Segarra, supra, pág. 191. De no hacerlo, corre el riesgo de que se dicte sentencia en su contra sin la celebración de un juicio en su fondo. Toledo Maldonado v. Cartagena Ortiz, Opinión de 21 de diciembre de 1992, 132 D.P.R. _ (1992), 92 J.T.S. 173, pág. 10229; Rivera Santana v. Superior Packaging, Inc., supra, pág. 10165; Mercado Vega v. U. P.R., supra, pág. 281.
Al dictar sentencia sumaria, los tribunales: (1) analizarán los documentos que acompañan la moción solicitando la misma, así como los documentos incluidos en la moción de oposición y aquéllos que obren en el expediente; y (2) determinará si el oponente controvirtió algún hecho material o si hay *1054 alegaciones en la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. PFZ Properties v. General Accident Insurance Co., supra.
A tenor con la normativa antes expuesta, es doctrina fuertemente establecida que los tribunales no deberán dictar sentencia sumaria en aquellas circunstancias en que: (1) existe controversia sobre algún hecho material, ya sea que surge de los documentos que acompañan la moción o de cualquier documento que conste en el expediente; (2) existen alegaciones afirmativas en la demanda que no han sido refutadas; o (3) como cuestión de derecho no procede. PFZ Properties v. General Accident Insurance, Co., supra.
De otra parte, se ha señalado que este mecanismo procesal "es especialmente deseable en aquellos casos en que se encuentra envuelta la libertad de expresión, pues la prolongación de estos pleitos puede tener un efecto paralizante o disuasivo ("chilling effect") sobre el ejercicio de este derecho fundamental". Bonilla Medina v. P.N.P., supra, citando a Méndez Arocho v. El Vocero, Opinión de 30 de junio de 1992, 131 D.P.R. _ (1992), 92 J.T.S. 94.
En el presente caso, la parte demandada solicitó la desestimación sumaria de todas las reclamaciones en su contra aduciendo una cuestión de estricto derecho: que la demanda no expone reclamación que justifique la concesión de un remedio. Regla 10.2 (5) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Zachry International v. Tribunal Superior, supra. Frente a una solicitud de desestimación por tal fundamento, la demanda deberá ser interpretada de la forma más liberal posible a favor de la parte demandante. Pressure Vessels of P.R. v. Empire Gas of P.R., Opinión de 23 de noviembre de 1994, 137 D.P.R. _ (1994), 94 J.T.S. 144, pág. 431; Condal v. City Radiology Office Inc., 112 D.P.R. 227, 230-231 (1982). Véase, además, J. A. Cuevas Segarra, supra, págs. 63-65. A dichos fines se ha establecido la norma de que los tribunales deberán dar por ciertas y buenas todas la alegaciones fácticas de la demanda. Pressure Vessel of P.R. v. Empire Gas of P.R., supra. Claro está, tal norma sólo aplica a los hechos bien alegados, expresados de manera clara y concluyente, por lo que de su faz no suijan dudas. Id. "Obviamente, no puede aplicarse a alegaciones redactadas de tal forma que su contenido resulte hipotético, resultando imposible al juzgador detectar específicamente, sin margen de error, cuál hecho está definitiva y concretamente alegado." J. A. Cuevas Segarra, supra, pág. 64.
IV
Tanto la Primera Enmienda de la Constitución Federal como la Sección 4 del Artículo 11 de la Constitución del Estado Libre Asociado de Puerto Rico consagran el derecho del pueblo a reunirse en asamblea pacífica, a requerir del gobierno reparación a los agravios, la libertad de prensa y la libertad de palabra o expresión. Esta última ha sido caracterizada como la quintaesencia de la sociedad democrática. Coss y La Universidad de Puerto Rico v. C.E.E., Opinión de 8 de febrero de 1995, 137 D.P.R. _ (1995) 95 J.T.S. 15, pág. 629; véase, además, Bonilla Medina v. P.N.P., supra, a la pág. 788. Esto es así porque la misma constituye "the matrix, the indispensable condition of nearly every other form of freedom". Nowak & Rotunda, Constitutional Law, Minnesota, West Publishing Co., V ed., 1991, pág. 934, citando a Palko v. Connecticut, 302 U.S. 319, 327 (1937). La esencia de este derecho estriba en que el Estado no puede coartar arbitrariamente la capacidad del ser humano para expresarse según su conciencia. Coss y La Universidad de Puerto Rico v. C.E.E., supra.
Debido al sitial preferencial concedido a este derecho entre los valores de la sociedad democrática, las disposiciones constitucionales antes mencionadas proscriben la aprobación de cualquier legislación que restrinja indebidamente la libertad de prensa o palabra. De igual forma, los tribunales han rechazado los intentos de censura previa ("prior restraint") al ejercicio de dicho derecho mediante interdictos o injunctions, predicados en impedir la realización de una expresión difamatoria. Aponte Martínez v. Lugo, 100 D.P.R. 282, 287 (1971); New York Times Co. v. U. S., 403 U. S. 713 (1971); Nearv. U. S., 283 U.S. 697 (1931)."Así, es un principio cardinal que a los intentos de censura previa se opone un escrutinio judicial cargando un pesado factor en contra de su subsistencia". Sánchez Carambot v. Dir. Col. Univ. Humacao, 113 D.P.R. 153, 162 (1962). Fundamento de ello es el hecho de que no son los tribunales los llamados a decidir la verdad o falsedad de la expresión cuya prohibición se solicita. "Se entiende, correctamente, que de emitirse injunctions contra expresiones alegadamente libelosas o difamatorias, se caería en el riesgo de convertir a los tribunales en censores previos de las expresiones públicas." D. Rivé Rivera, Recursos Extraordinarios, San Juan, U.I.A.P.R., 2 ed. revisada, 1996, pág. 68.
*1055 No obstante, lo anterior no implica que el derecho a la libre expresión sea irrestricto. Por el contrario, dicho derecho puede ser condicionado cuando existan intereses públicos apremiantes que así lo requieran. Pueblo v. Santos Vega, 115 D.P.R. 818, 821 (1984); Rodríguez v. Srio. de Instrucción, 109 D.P.R. 251, 255 (1979); Marí Bras v. Casañas, 96 D.P.R. 15 (1968). Es necesario recordar que nuestro sistema democrático presupone y requiere el ejercicio responsable —no abusivo— de los derechos. Aponte Martínez v. Lugo, supra, pág. 290.
De otra parte, se ha señalado que el derecho a pedir al gobierno reparación por los agravios tiene, al igual que los demás derechos reconocidos en la primera enmienda, el propósito de garantizar la más amplia libertad de expresión. Defendini Collazo et al. v. E.L.A., Opinión de 15 de julio de 1993, 134 D.P.R. _ (1993), 93 J.T.S. 113, pág. 11009. Como corolario necesario, dicho derecho incluye el derecho de todo ciudadano a acudir a los tribunales o, por analogía, a los organismos competentes a solicitar la reparación de los agravios. Id.; Hotten v. Jenne, 786 F. 2d 692, 697 (1986); Tugwell v. Griffith, 742 F. 2d 250, 252 (1982); McKay v. Hammock, 730 F. 2d 1367, 1375 (1984).
El derecho de acceso a los tribunales supone que los procedimientos y acciones ante éstos sean instados de buena fe. People of the State of Colo. v. Carter, 678 F. Supp. 1484 (1986). Así, el ejercicio de este derecho constitucional no ampara el inicio de acciones frívolas, abusivas o maliciosas. Dept. v. Fleming, 726 F Supp. 1216 (1989). Contra este tipo de acciones el ordenamiento jurídico reconoce mecanismo para sancionar a la parte promovente y/o resarcir a la parte afectada por los mismos. Entre éstas se encuentran las acciones en daños y perjuicios por persecución maliciosa y abuso de derecho.
La doctrina define persecución maliciosa como "La institución maliciosa y sin causa probable de un proceso penal contra una persona, que produce daños a ésta". H. Brau del Toro, supra, pág. 109. Como surge de la definición anterior, en nuestra jurisdicción se reconoce una acción civil por daños y perjuicios como consecuencia de una acción criminal maliciosamente instada; sin embargo, no existe per se una causa similar para resarcir los daños sufridos como consecuencia de un pleito civil. En el Derecho Puertorriqueño, como norma general, el uso indebido de los procedimientos jurídicos se sanciona con la imposición de costas y honorarios de abogado. Jiménez Alvarez v. Silén Maldonado et al., Opinión de 30 de junio de 1992, 130 D.P.R. _ (1992), 92 J.T.S. 95, pág. 9725; Pereira v. Hernández, 83 D.P.R. 160, 164-165 (1961).
No obstante, a manera de excepción se reconoce la procedencia de una acción por los daños y perjuicios ocasionados como consecuencia de procedimientos de naturaleza civil, en aquellas situaciones en que los hechos del caso revelan que la presentación o instigación de tales procedimientos constituyen parte de un patrón de acoso al demandante. Jiménez Alvarez v. Silén Maldonado, et al., supra, Así, para que un pleito en daños y perjuicios por persecución maliciosa prospere, el demandante deberá establecer:
"(1) que una acción civil fue iniciada, o un procedimiento criminal instituido, por el demandado o a instancia de éste: [sic] (2) que la acción, o la causa, terminó de modo favorable para el demandante; (3) que fue seguida maliciosamente y sin que existiera causa probable; y (4) que el demandante sufrió daños y perjuicios a consecuencia de ello." Id., citando a Fonseca v. Oyóla, 77 D.P.R. 525, 528 (1954). Véanse, además, Ocasio v. Alcalde del Mun. de Maunabo, 121 D.P.R. 37, 59 (1988); Raldiris v. Levitt & Sons of P.R., Inc., 103 D.P.R. 778, 781 (1975); Parés v. Ruiz, 19 D.P.R. 342, 346 (1913); Lora Rivera v. Drug Enforcement Administration, 800 F. Supp. 1049 (1992); Harrington v. U.S., 748 F. Supp. 919, 933 (1990); Rodríguez, v. Clark Color Laboratories, 732 F. Supp. 279, 284 (1990); y Brau del Toro, supra, págs. 110-112.
La jurisprudencia ha aclarado que, bajo esta causa de acción, "causa probable" es "una sospecha fundada en circunstancias bastante poderosas para justificar la creencia que tiene una persona razonable de que la acusación es cierta y que dicha cuestión no depende de si se cometió el delito o no, sino en la creencia del denunciante en la verdad de la imputación hecha por él". Raldiris v. Levitt & Sons of P.R., Inc., supra, citando a Parés v. Ruiz, supra, págs. 349-350. De esta forma, corresponde al demandante probar que el demandado no tenía una creencia honesta y razonable de la verdad de los hechos imputados ni de que éstos constituian delito. H. Brau del Toro, supra, pág. 110.
*1056 De otra parte, acerca del concepto "abuso del derecho", la doctrina ofrece dos acepciones:
"[u]na, de naturaleza subjetiva, que ve el abuso del derecho en el ejercicio del mismo, bien fuere con la intención de dañar, o sin verdadero interés para el que lo ejercita. Otra, denominada objetiva, que percibe el abuso en el ejercicio anormal del derecho, contrariando los fines económicos o sociales para los que fue creado." Soriano Tavárez v. Rivera Anaya, 108 D.P.R. 663, 670-671 (1979).
Como bien señala la apelante, a pesar de que Tribunal Supremo reconoció en nuestra jurisdicción una causa de acción en daños y perjuicios para resarcir los daños ocasionados por ejercicio abusivo de los procedimientos, al presente no se han detallado sus requisitos. Al respecto, el profesor Brau del Toro señaló que dicha acción requiere que: (1) el demandado utilice intencionalmente un procedimiento jurídico con propósitos distintos a aquéllos por los que fue creado; (2) se produzcan daños, no importa la naturaleza; y (3) exista una relación causal entre la conducta del demandado y los daños sufridos por el demandante. Brau del Toro, supra, pág. 113. Es necesario resaltar que la acción por abuso de derecho, a diferencia de la acción por persecución maliciosa, no requiere malicia, ausencia de causa probable, que el demandado haya instado un procedimiento civil o criminal, o que el resultado final del mismo haya sido favorable al demandante. Id.
Atendidas las circunstancias particulares del caso de autos a la luz de la normativa antes expuesta y luego de considerar las mociones de sentencia sumaria, así como los documentos que las acompañan, resulta evidente que el foro inferior actuó correctamente al desestimar las acciones por persecución maliciosa y abuso de derecho o de los procedimientos. Surge de los hechos incontrovertidos que, contrario a lo que sostiene la apelante, las querellas presentadas por los demandados tenían el propósito de que se resolviera un problema que les causaba daños e impedía el disfrute de su propiedad, y el cual de buena fe creían era ocasionado por irregularidades en el funcionamiento de la institución educativa administrada por St. Mary's. Posteriormente, las investigaciones realizadas por las agencias competentes determinaron que, en efecto, existían irregularidades en cuanto al número de estudiantes y cursos ofrecidos.
Todo lo anterior muestra que, en cuanto a la causa de acción por persecución maliciosa, en este caso se encuentran ausentes al menos dos requisitos. Primero, que la acción que da paso a la reclamación por daños y perjuicios haya terminado de forma favorable al demandante, ya que en el presente caso, los procedimientos instados contra la demandante concluyeron reconociendo que ésta estaba operando en violación del permiso de uso otorgado. Segundo, que haya sido instada y seguida maliciosamente. Según surge del expediente, en el presente caso las motivaciones de los demandados al presentar las querellas no eran incomodar o acosar a la demandante, sino vindicar su derecho al disfrute de la propiedad.
De igual forma, en el presente caso es inexistente la causa de acción por abuso de derecho. Los procedimientos ante las agencias no fueron iniciados con un propósito distinto al que fueron diseñados. Además, los daños que dichos procedimientos pudieron producir no son consecuencia de las querellas presentadas por los demandados, sino a que St. Mary's estaba operando la escuela en violación a lo autorizado por las agencias competentes. Ante tales hechos, actuó correctamente el foro inferior al desestimar sumariamente dichas causas de acción.
Dirigiendo ahora nuestra atención al primer señalamiento de error, resulta evidente también que el tribunal de instancia actuó correctamente al denegar la expedición del injunction. Es incorrecta la contención de la demandante-apelante de que el tribunal sentenciador concluyó "que la mera radicación de la demanda es constitutiva de censura previa, bajo la doctrina de Near v. Minnesota, 283 U.S. 697 (1931)". Escrito del Recurso, a la pág. 7. Una lectura desapasionada de la sentencia impugnada, revela que, contrario a lo que sostiene St. Mary's, dicho foro concluyó que era la expedición del injunction solicitado lo que constituía una censura previa al derecho de libertad de expresión de los demandados y no la mera presentación de la demanda. Por ello, -a tenor con Near, supra, y su progenie- correctamente rechazó la expedición del referido recurso extraordinario.
De otra parte, entre las expresiones y actos que con el mismo se intentaban impedir, se encuentra el ejercicio responsable del derecho fundamental de solicitar del Estado reparación por los agravios solicitados. Así, la expedición de la orden solicitada tendría el efecto adicional de prohibir el ejercicio *1057 de este derecho.
V
En nuestra jurisdicción la acción por daños y perjuicios por difamación tiene dos bases estatutarias, a saber, el Artículo 1802 del Código Civil, 31 L.P.R.A. seec. 5141, y la "Ley de libelo y calumnia", Ley de 19 de febrero de 1902, 32 L.P.R.A. secs. 3141-3149. Esta última sobrevive tan sólo en cuanto es compatible con nuestra constitución. Jiménez Alvarez v. Silén Maldonado et al., supra, pág. 9726; Clavell v. El Vocero, 115 D.P.R. 685 (1984).
El término difamación denota una acción torticera general que incluye las acciones por libelo y calumnia. H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, San Juan, Publicaciones JTS, 2a ed. revisada y aumentada, vol. 1, 1986, pág. 986. La diferencia entre estas últimas es que el libelo requiere, además de otros elementos, que la expresión difamatoria conste en un récord permanente o escrito, mientras que para la calumnia basta con la expresión verbal. Id.
El objeto de derecho tutelado por la acción por difamación es la reputación personal y el buen nombre de la persona públicamente injuriada. Sociedad de Gananciales v. El Vocero, Opinión de 7 de febrero de 1994, 135 D.P.R. _ (1994), 94 J.T.S. 13, pág. 11502. Mediante dicha acción se intentan proteger las relaciones que sostiene en el presente, así como las que podría sostener en el futuro, la persona injuriada con terceros, y evitar que se cree una imagen pública negativa. Id.
Para que una acción civil en daños y perjuicios por difamación o libelo prospere, el demandante deberá establecer:
"(1) la falsedad de la información publicada; (2) en el caso de que el demandante sea figura pública, que las expresiones fueron hechas con "malicia real", esto es, a sabiendas de su falsedad o con grave menosprecio de su veracidad; (3) en el caso de que el demandante sea una figura privada, que las expresiones fueron hechas negligentemente; y (4) los daños reales sufridos como consecuencia de dicha publicación." Garib Barzán v. Clavell, Opinión de 18 de marzo de 1994, 135 D.P.R. _ (1994), 94 J.T.S. 36, pág. 11677; Torres Silva v. El Mundo, Inc., 106 D.P.R. 415, 427 (1977)".. Brau del Toro, supra, págs. 989-990.
De otra parte, la sección 4 de la Ley de Libelo y Calumnia, supra, sec. 3144, establece que "[n]o se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en procedimiento legislativo, judicial u otro procedimiento cualquiera autorizado por ley". En Jiménez Alvarez v. Silén et al, supra, interpretando la disposición anterior expresó que:

"Dentro de dicho contexto debe considerarse que la demanda es una "publicación que se hace en un procedimiento judicial" y que cualquier manifestación allí aseverada estaría impedida de considerarse como maliciosa para propósitos de una acción de libelo si ésta tiene algún tipo de relación con el asunto en controversia.

Así también, al amparo de dicho precepto debe considerarse que las querellas presentadas ante una agencia gubernamental constituyen una 'publicación que se hace en un procedimiento autorizado por ley.' Deforma que cualquier aseveración hecha en la misma no puede considerarse como maliciosa para propósitos de una acción de libelo." I
Luego de considerar las alegaciones contenidas en la demanda, es menester concluir, al igual que el foro inferior, que en la misma no se exponen las alegadas expresiones difamatorias, la fecha en que se realizaron, ni su autor. Resalta, además, que en general no se trata de alegaciones fácticas, sino de conclusiones de derecho que corresponde al juzgador realizar. Ejemplo de ello es: "han desarrollado una campaña de descrédito, persecución maliciosa y ataques abusivos a la honra y reputación del Colegio". Demanda enmendada, a la pág. 4, Apéndice del Recurso, a la pág. 23. Lo anterior en forma alguna es una alegación de hechos. Por ello, aun cuando aceptemos como ciertas las alegaciones fácticas contenidas en la demanda, resulta procedente su desestimación debido a que no expone hechos que ameriten la concesión de un remedio.
*1058 VI
Por los fundamentos antes consignados, se confirma el dictamen sumario emitido por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 11 de diciembre de 1996.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General