# 2001 DTA 126

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE BAYAMON

ANTONIO J. CABRERO MUÑIZ
Recurrido

v.

FRANCISCO ZAYAS SEIJO
Peticionario

v.

FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES, ETC.
Co-Demandadas

Núm. KLCE-00-00057

San Juan, Puerto Rico, a 27 de febrero de 2001

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y el Juez Salas Soler

## TEXTO COMPLETO DE LA SENTENCIA

El 21 de enero de 2000, el Hon. Francisco Zayas Seijo (en adelante Zayas Seijo) presentó Petición de *Certiorari* y nos solicitó la revocación de la Resolución emitida el 16 de septiembre de 1999, notificada el 22 de diciembre de 1999, por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en el caso de *Antonio J. Cabrero Muñiz v. Francisco Zayas Seijo y otros*, Caso Civil Número DDP-98-1258 (505), sobre Daños y Perjuicios. Mediante dicha resolución, el tribunal de instancia declaró No Ha Lugar la Solicitud de Sentencia Sumaria presentada por Zayas Seijo y determinó que los hechos reclamados en la demanda no estaban cobijados por la inmunidad legislativa de Zayas Seijo. Por los fundamentos que expondremos a continuación, EXPEDIMOS el Auto de *Certiorari* solicitado y CONFIRMAMOS la Resolución recurrida.

### I

El 14 de octubre de 1998, el Sr. Antonio J. Cabrero Muñiz (en adelante Cabrero) presentó Demanda de daños y perjuicios contra Zayas Seijo y alegó que éste lo había difamado al realizar manifestaciones falsas en su contra, de manera intencional, con malicia real y grave menosprecio de la verdad. La alegada difamación ocurrió cuando Zayas Seijo emitió un comunicado de prensa y compareció al programa radial del Sr. Luis Francisco Ojeda para informar que el Sr. Freddy Valentín (en adelante Valentín) había adquirido de la Oficina para la Liquidación de las Cuentas de la Corporación de Renovación Urbana y Vivienda (en adelante CRUV) siete apartamentos por debajo del precio de tasación, que dicha transacción era parte de un esquema de favoritismo político a favor de Valentín y que Cabrero había incumplido su deber ministerial como Síndico Liquidador de la CRUV al favorecer a Valentín.

En la demanda, Cabrero también alegó que El Nuevo Día, Inc. había publicado varias noticias relacionadas al comunicado de prensa emitido por Zayas Seijo sin haber corroborado las mismas. Por tal razón, como las manifestaciones intencionales y maliciosas de Zayas Seijo y de El Nuevo Día Inc. habían ocasionado a Cabrero angustias y sufrimientos mentales, éste solicitó al tribunal de instancia que declarara Con Lugar la demanda y ordenara a dichos co-demandados pagar una suma no menor de un millón de dólares, más las costas, los gastos del proceso y honorarios de abogado.

El 5 de febrero de 1999, Zayas Seijo presentó "*Moción de Desestimación y/o Solicitud de Sentencia Sumaria*" y alegó que los planteamientos públicos enunciados por él no habían sido realizados con malicia real, ni grave menosprecio de la verdad. También, Zayas Seijo alegó que "*lo que se exprese o haga en el curso de*

*procedimientos legislativos, sea en el hemiciclo, en las comisiones o en foros públicos bajo la esfera de una actividad legislativa legítima -incluyendo la gestión intrínseca del legislador de hacer pública información recopilada en el desempeño de su función fiscalizadora-, está debidamente cobijada por la inmunidad parlamentaria."* Por lo tanto, Zayas Seijo solicitó la desestimación de la demanda presentada por Cabrero.

El 29 de marzo de 1999, Cabrero presentó *"Oposición a Solicitud de Desestimación y/o Sentencia Sumaria"* y alegó que no procedía la desestimación de la demanda porque *"el presente caso trata de actuaciones no relacionadas con proceso legislativo alguno, hechas arbitrariamente y en violación de los derechos constitucionales del demandante"* y porque *"si el acto no está relacionado con el proceso de investigación y aprobación de leyes, no aplica la inmunidad legislativa"*. También, Cabrero alegó que las manifestaciones de Zayas Seijo fueron realizadas con conocimiento de su falsedad y en grave menosprecio a la verdad y que las mismas imputaban a Cabrero la comisión de delitos públicos.

El 13 de agosto de 1999, Zayas Seijo presentó réplica a la oposición de Cabrero y alegó que él gozaba de inmunidad contra la reclamación de éste porque las aseveraciones y expresiones objeto de la demanda habían sido emitidas como parte del ejercicio de una actividad legislativa legítima y porque las mismas formaban parte integral del proceso legislativo. Además, Zayas Seijo alegó que Cabrero no podría probar que las manifestaciones habían sido realizadas con la malicia real requerida para que su causa de acción prosperara.

Así las cosas, el 16 de septiembre de 1999, notificada el 22 de diciembre de 1999, el tribunal de instancia emitió resolución y declaró no ha lugar la sentencia sumaria solicitada por Zayas Seijo. En dicha resolución, el tribunal de instancia determinó que la inmunidad legislativa no cobijaba las manifestaciones realizadas por Zayas Seijo y que, por lo tanto, no existía impedimento legal para dilucidar la reclamación de libelo y calumnia presentada por Cabrero. El tribunal de instancia también determinó que no procedía emitir sentencia sumariamente porque aún estaban en controversia los alegados daños morales sufridos por Cabrero, el grado de conocimiento que Zayas Seijo tenía sobre la probable falsedad de la información recibida, y si Zayas Seijo y El Nuevo Día, Inc. habían actuado con grave menosprecio de la verdad.

No conforme, el 21 de enero de 2000, Zayas Seijo compareció ante nos mediante Petición de *Certiorari* y *"Moción Solicitando Orden de Paralización"*. En la petición de *certiorari*, Zayas Seijo alegó que el tribunal de instancia erró al determinar que él no estaba cobijado por la inmunidad legislativa, que el tribunal de instancia erró al determinar que no procedía emitir sentencia sumariamente y que el tribunal de instancia erró al determinar que Cabrero había demostrado que posiblemente podría probar los elementos de una causa de acción por difamación a una figura pública.

Zayas Seijo también alegó que la inmunidad parlamentaria era de aplicación flexible, que el poder de investigar, al igual que la obligación de informar al público en general, era bastante amplio y que Cabrero no podría probar que las aseveraciones habían sido realizadas con la malicia real requerida para que su causa de acción prosperara. Por lo tanto, Zayas Seijo nos solicitó la revocación de la resolución recurrida y la paralización los procedimientos ante el tribunal de instancia hasta tanto el recurso de epígrafe no fuera resuelto.

El 8 de marzo de 2000, emitimos resolución interlocutoria, declaramos no ha lugar la orden de paralización solicitada por Zayas Seijo y concedimos a Cabrero un término de 30 días para presentar su alegato en oposición al recurso de autos. El 14 de abril de 2000, Cabrero presentó su alegato y nos solicitó la confirmación de la resolución recurrida. En síntesis, Cabrero alegó que las manifestaciones de Zayas Seijo no fueron pronunciadas en una actividad legislativa en el hemiciclo o en las comisiones, y que Zayas Seijo no demostró que las imputaciones calumniosas constituyeran una comunicación, investigación, información o actos necesarios para el desarrollo del proceso legislativo.

También, Cabrero alegó que *"el poder legislativo de investigación corresponde a la Asamblea Legislativa y a sus comisiones debidamente constituidas y no a legisladores individuales en particular"* y que la sentencia

sumaria solicitada por Zayas Seijo era prematura porque aún faltaba por determinar si *"el demandante es o no figura pública, si el demandado fue negligente, y el elemento de intención con que el demandado hizo las manifestaciones calumniosas."*

Finalmente, el 15 de febrero de 2001, Zayas Seijo presentó Moción Urgente en Auxilio de Jurisdicción y nos solicitó la paralización de una deposición pautada para el 8 de marzo de 2001 hasta tanto el presente recurso no fuera resuelto.

Luego de analizar el expediente ante nos, así como el derecho y la jurisprudencia aplicable, procedemos a resolver.

## II

La Constitución del Estado Libre Asociado de Puerto Rico confiere a los miembros de la Asamblea Legislativa inmunidad parlamentaria por sus votos y expresiones en una u otra cámara o en cualquiera de sus comisiones. Específicamente, la Sección 14 del Artículo III de nuestra Constitución dispone lo siguiente:

*"Ningún miembro de la Asamblea Legislativa será arrestado mientras esté en sesión la cámara de la cual forma parte, ni durante los quince días anteriores o siguientes a cualquier sesión, excepto por traición, delito grave, o alteración a la paz; y todo miembro de la Asamblea Legislativa gozará de inmunidad parlamentaria por sus votos y expresiones en una u otra cámara o en cualquiera de sus comisiones."*

El propósito básico de la cláusula de inmunidad parlamentaria es salvaguardar la independencia de la Rama Legislativa y fortalecer así el sistema de la separación de poderes. Para que pueda lograr sus propósitos, dicha cláusula tiene que ser interpretada liberalmente porque, de lo contrario, los legisladores quedarían inhibidos y distraídos en el desempeño de sus deberes constitucionales debido al temor de ser demandados por sus actuaciones oficiales, *In re: Rodríguez, Peña Clós y la Comisión Especial Sobre el Cerro Maravilla,* __ D.P.R. __ (1999), **99 J.T.S. 110**, página 1284; *Silva v. Hernández Agosto*, 118 D.P.R. 45, 59 (1986); *Vélez Ramírez v. Colberg Ramírez,* 117 D.P.R. 873, 884 (1986); *Romero Barceló v. Hernández Agosto*, 115 D.P.R. 368, 379-380 (1984).

El ámbito de la cláusula de inmunidad parlamentaria es amplio y el mismo cubre toda actividad legislativa legítima desarrollada en el hemiciclo de las cámaras y en el seno de las comisiones que tenga que ver con los procesos de deliberación, comunicación, investigación, información y los actos necesarios para el desarrollo del proceso legislativo, *In re: Angel Figueroa Vivas,* __ D.P.R. __ (1999), **99 J.T.S. 164**, página 293; *In re: Rodríguez, Peña Clós y la Comisión Especial Sobre el Cerro Maravilla, supra*, página 1284; *Vélez Ramírez v. Colberg Ramírez, supra*, página 876; *Romero Barceló v. Hernández Agosto, supra*, página 379.

Además de las actividades legislativas legítimas mencionadas anteriormente, los legisladores también realizan otra serie de actividades. Entre esas actividades están el concertar citas con organismos gubernamentales, pronunciar discursos fuera de los hemiciclos de las cámaras, y preparar comunicados de prensa. Sin embargo, como dichas actividades son más bien de carácter político que legislativo, las mismas no están protegidas por la cláusula de inmunidad parlamentaria, *Hutchinson v. Proxmire*, 443 U.S. 111, 130-133 (1979); *United States v. Brewster*, 408 U.S. 501, 512 (1972).

Aunque la inmunidad parlamentaria pretende proteger a la Rama Legislativa de intervenciones indebidas de la Rama Ejecutiva o de la Rama Judicial, como todo derecho y todo poder, la misma no es absoluta y corresponde a los tribunales el definir sus contornos. Al definir dichos contornos, los tribunales tienen que determinar si cierto acto constituye una actividad legislativa legítima. En otras palabras, los tribunales tienen que dilucidar la naturaleza de dicho acto y su relación con el proceso deliberativo y de votación inherente a las funciones parlamentarias, *In re: Nicolás Nogueras Cartagena,* __ D.P.R. __ (2000), **2000 J.T.S. 68**, página 942; *Silva v. Hernández Agosto; supra*, páginas 59-60; *Vélez Ramírez v. Colberg Ramírez, supra*, página 876;

*Romero Barceló v. Hernández Agosto, supra,* páginas 379-380.

## III

En el recurso ante nuestra consideración, Zayas Seijo alega que el tribunal de instancia erró al determinar que los hechos alegados por Cabrero no están cobijados por la inmunidad legislativa. Sin embargo, de la aplicación de las normas que anteceden, surge que dicho error no fue cometido.

Las manifestaciones que Zayas Seijo realizó contra Cabrero no forman parte de una actividad legislativa porque las mismas no están relacionadas al proceso deliberativo y de votación inherente a las funciones parlamentarias. Además, dichas manifestaciones no fueron expresadas en el hemiciclo de la Cámara de Representantes, ni en una de las Comisiones de dicha Cámara, sino en el programa radial del Sr. Luis Francisco Ojeda y en un comunicado de prensa.

Aunque Zayas Seijo alega que, como legislador, él tiene el deber de informar al país sobre la marcha de la cosa pública, la información divulgada por éste en el comunicado de prensa y en el programa radial del Sr. Luis Francisco Ojeda, no forma parte del desarrollo del proceso legislativo. En vez de representar la voluntad del Cuerpo Legislativo o de una de sus Comisiones, dicha información representa la voluntad y el interés individual de uno de sus miembros.

Por lo tanto, como las manifestaciones de Zayas Seijo son más bien de carácter político, como éstas no forman parte de una actividad legislativa legítima y como éstas no fueron realizadas en el hemiciclo de la Cámara de Representantes o en una de sus Comisiones, resolvemos que las mismas no están cobijadas por la cláusula de inmunidad parlamentaria.

## IV

En Puerto Rico, está reconocida la acción de daños y perjuicios por difamación, la cual ha sido definida en el ámbito civil como "*desacreditar a una persona publicando cosas contra su reputación.*" Dicha acción es una acción torticera genérica que incluye tanto el libelo como la calumnia. Por un lado, para que proceda una acción de libelo es necesario que exista un récord permanente de la expresión difamatoria, además de los otros elementos de la acción. Por otro lado, la calumnia queda configurada con la mera expresión oral difamatoria junto con los otros elementos de la acción, *Pérez Rosado v. El Vocero de Puerto Rico, Inc.,* __ D.P.R. __ (1999), **99 J.T.S. 160**, página 264; *Ojeda v. El Vocero de P.R.,* 137 D.P.R. 315, 325-326 (1994).

La fuente primaria de protección contra expresiones difamatorias es el Artículo II, Sección 8 de la Constitución del Estado Libre Asociado de Puerto Rico, el cual establece que toda persona tiene derecho a estar protegida, contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Aunque la Ley de Libelo y Calumnia, 32 L.P.R.A. Sección 3141, *et seq.,* ofrece protección contra injurias, ésta sólo sobrevive en tanto y en cuanto sea compatible con la Constitución del Estado Libre Asociado de Puerto Rico. *Pérez Rosado v. El Vocero de Puerto Rico, Inc., supra,* página 265; *Acevedo Santiago v. Western Digital Caribe, Inc.,* __ D.P. R. __ (1996), **96 J.T.S. 42**, página 878; *Villanueva v. Hernández Class,* 128 D.P.R. 618, 640-641 (1991); *Clavell v. El Vocero de P.R.,* 115 D.P.R. 685, 690 (1984).

La acción por difamación (libelo y calumnia) es una de resarcimiento de daños dirigida a vindicar el interés social en la reputación de la persona. El demandante, en un caso de libelo, debe probar que la información o expresión publicada es falsa y difamatoria y que por causa de su publicación sufrió daños reales. Además, contrario a la figura privada que sólo tiene que demostrar que la publicación fue hecha negligentemente, la figura pública tiene que demostrar la existencia de malicia real. Esto es, demostrar que la información fue publicada a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Ojeda v. El Vocero de P.R., supra,* páginas 328-329; *Garib Bazain v. Clavell,* 135 D.P.R. 475, 482 (1994); *Soc. de Gananciales v. El Vocero de P.R.,* 135 D.P.R. 122, 136 (1994); *Parrilla v. Ranger American of P.R.,* 133 D.P.R. 263, 272 (1993); *Porto y Siurano v. Bentley P.R., Inc.,* 132 D.P.R. 331, 345 (1992); *Méndez Arocho v. El Vocero de P.R.,* 130 D.

P.R. 867, 877-878 (1992); *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 427 (1977).

El fundamento racional de la dicotomía figura pública-privada consiste en que la figura pública, por lo general, goza de un mayor acceso a los medios de comunicación para refutar la publicación difamatoria y contrarrestar su efecto. Además, es asumido que la figura pública se ha expuesto voluntariamente al riesgo de un juicio más riguroso por el público, *Clavell v. El Vocero de P.R., supra*, página 693; *Torres Silva v. El Mundo, Inc., supra*, página 422.

Cuando un demandante es catalogado como figura pública, ello significa que *"para prevalecer en un pleito de difamación, se le someterá a un criterio más riguroso de prueba, que su derecho a la intimidad pesa menos que el derecho de otros a la libre expresión, a menos que demuestre la existencia en éstos de malicia real."* *Garib Bazain v. Clavell, supra*, página 483; *Clavell v. El Vocero de P.R. supra*, páginas 692-693.

La malicia real no puede ser presumida, por lo que el demandante tiene que probar dicha existencia mediante prueba clara y convincente. Al menos, hay que probar que el demandado tuvo serias dudas sobre la certeza de la información publicada debido a que la prueba de mala voluntad u odio no satisface de por sí el grado constitucionalmente requerido para probar la existencia de malicia real. *Garib Bazain v. Clavell, supra*, páginas 484-485; *Villanueva v. Hernández Class, supra*, página 643; *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 180-181 (1978).

## V

Por otra parte, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, autoriza a un tribunal a emitir sentencia sumariamente cuando no existe *"controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente,"* *Tello Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

La sentencia sumaria es un mecanismo extraordinario y discrecional que procede cuando la parte promovente demuestra al tribunal que no existe necesidad de celebrar una vista evidenciaria del caso en su fondo. Como regla general, los tribunales emiten sentencia sumariamente a base de los documentos admisibles en evidencia sometidos por el promovente con su moción, los documentos sometidos por la parte promovida en su moción en oposición y aquéllos que obran en el expediente del tribunal. *Luán Investment Corp. v. Rexach Construction Co., Inc.*, __ D.P.R. __ (2000), **2000 J.T.S. 196**, página 553; *Hernández Villanueva v. Hernández*, __ D.P.R. __ (2000), **2000 J.T.S. 26**, página 608; *García Díaz v. Darex Puerto Rico, Inc.*, __ D.P.R. __ (1999), **99 J.T.S. 84**, página 1058; *Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico*, 135 D.P.R. 716, 726 (1994).

La moción de sentencia sumaria obliga a la parte promovente a presentar la prueba que ésta utilizará en el juicio para apoyar una alegación. Su efecto real es adelantar incidentes que podrían ocurrir en el juicio. A través de este mecanismo, el tribunal puede considerar prueba que, de no ser adecuadamente refutada, permite la disposición del pleito a favor de alguna de las partes. *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272, 279 (1990).

La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, procede que el tribunal emita sentencia a su favor. Entonces, la parte opositora está en posición de controvertir los hechos presentados por el promovente. *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, __ D.P.R. __ (2000), **2000 J.T.S. 33**, página 681; *Pilot Life Insurance Company v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y sostenida en la forma provista por la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no puede descansar en las aseveraciones o negaciones

contenidas en su demanda. Dicha parte viene obligada a contestar la moción en forma tan detallada y específica, como lo hubiere hecho la parte promovente, y también viene obligada a exponer los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. Además, como regla general, el opositor debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. De no hacerlo, y si procediere en derecho, el tribunal debe emitir sentencia sumaria en su contra. Regla 36 de Procedimiento Civil, *supra; Piñero González v. Autoridad de Acueductos y Alcantarillados*, __ D.P.R. __ (1998), **98 J.T.S. 140**, página 216; *Audiovisual Language v. Sistema de Estacionamientos Natal Hermanos*, __ D.P.R. __ (1997), **97 J.T.S. 147**, página 400; *PFZ Properties v. General Accident Insurance Corp.*, 136 D.P.R. 881, 912-913 (1994); *J.A.D.M. v. Centro Comercial Plaza Carolina*, 132 D.P.R. 785, 802-803 (1993); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991); *Tello Rivera v. Eastern Airlines, supra,* página 87.

De existir una disputa de hechos *bona fide,* no procede que los tribunales emitan sentencia sumariamente. Cualquier duda sobre la existencia de una controversia de hechos debe ser resuelta contra la parte que solicita la sentencia sumaria. Por lo tanto, sólo cuando los casos resulten claros, o sea, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes, es que procede que los tribunales emitan sentencia sumariamente. *Management Administration Services Corp. v. Estado Libre Asociado de Puerto Rico,* __ D.P.R. __ (2000), **2000 J.T.S. 189**, página 440; *Hernández Sánchez v. Bermúdez & Longo, S.E.,* __ D.P.R. __ (1999), **99 J.T.S. 162**, página 285; *Rivera Rodríguez v. Departamento de Hacienda,* __ D.P.R. __ (1999), **99 J.T.S. 144**, página 53; *Cuadrado Lugo v. Santiago Rodríguez, supra,* página 279; *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D. P.R. 117, 134 (1990).

Sin embargo, no es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria en aquellos casos donde haya elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial. Por su propia naturaleza, ciertos litigios y controversias no hacen deseable o aconsejable el resolverlos mediante una sentencia emitida sumariamente debido a que, en los mismos, difícilmente el Tribunal pueda reunir ante sí toda la verdad de los hechos a través de declaraciones juradas o deposiciones. Ello es así porque, en dichos casos, la credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. *Soto v. Hotel Caribe Hilton,* 137 D.P.R. 294, 301 (1994); *Rodríguez Meléndez v. Sup. Amigo, Inc., supra,* páginas 134-135; *García López v. Méndez García,* 88 D.P.R. 363, 380 (1963).

Ahora bien, en cuanto a una acción por difamación, si el demandante es una figura pública que no logra demostrar la existencia de malicia real por parte del demandado, procede que los tribunales emitan sentencia sumariamente. Ante una solicitud de sentencia sumaria, el demandante tiene el deber de producir prueba, en dicha etapa, sobre hechos materiales respecto a los cuales no exista controversia real sustancial y que, de ser probados en un juicio plenario, establecerían la existencia de malicia real por parte del demandado. Ello es así porque el procedimiento de sentencia sumaria es una parte integral de la protección constitucional disponible a los demandados en este género de litigio. *Méndez Arocho v. El Vocero de P.R., supra,* páginas 874-875; *Villanueva v. Hernández Class, supra,* páginas 643-644; *Clavell v. El Vocero de P.R., supra,* página 696; *García Cruz v. El Mundo, Inc, supra,* página 182.

## VI

En la resolución recurrida, el tribunal de instancia denegó la sentencia sumaria solicitada por Zayas Seijo porque existían controversias sobre varios hechos sustanciales. Aunque Zayas Seijo alega que el tribunal de instancia erró al denegar su solicitud de sentencia sumaria, de la aplicación de las normas anteriormente expuestas, surge que el tribunal de instancia no cometió dicho error.

En su solicitud de sentencia sumaria, Zayas Seijo alegó que Cabrero era una figura pública y que en su demanda éste no había establecido los elementos necesarios para una causa de acción por difamación porque éste no había probado que los señalamientos públicos en su contra eran falsos y que los mismos habían sido

realizados con malicia real y con grave menosprecio de la verdad. Sin embargo, con su oposición a la solicitud de sentencia sumaria y con los documentos y declaraciones juradas anejados a dicha oposición, Cabrero presentó prueba sobre varios hechos materiales que, de ser probados en un juicio plenario, establecerían la existencia de malicia real por parte de Zayas Seijo.

Ante esa situación, y como la solicitud de sentencia sumaria debe ser evaluada de la forma más favorable al demandante, procedía que, en esa etapa de los procedimientos, el tribunal de instancia denegara la sentencia sumaria solicitada por Zayas Seijo; máxime cuando en el caso a ser dilucidado en dicho tribunal, había elementos subjetivos de intención y de propósitos mentales. El tribunal de instancia venía obligado a celebrar un juicio en su fondo para dilucidar si las expresiones de Zayas Seijo eran falsas, si éstas habían sido realizadas con malicia real y grave menosprecio a la verdad y si Cabrero había sufrido daños debido a las mismas.

Por lo tanto, como cualquier duda sobre la existencia de una controversia de hechos debe ser resuelta contra la parte que solicita la sentencia sumaria, y como Cabrero presentó evidencia que podría demostrar que Zayas Seijo actuó con malicia real y grave menosprecio a la verdad, resolvemos que el tribunal de instancia actuó correctamente al denegar la solicitud de sentencia sumaria presentada por Zayas Seijo.

## VII

En virtud de los fundamentos que anteceden, EXPEDIMOS el Auto de *Certiorari* solicitado y CONFIRMAMOS la Resolución recurrida.

NOTIFIQUESE esta determinación en el día de HOY a los abogados de las partes por facsímil y correo ordinario.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General