# 2007 DTA 129

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE FAJARDO**

EDISON PADRÓ ROSADO
Demandante-Apelante

v.

COOPERATIVA GASOLINERA CHOFERIL, CARMELO CARRIÓN Y/O SU JUNTA DE DIRECTORES A TRAVÉS DE SU PRESIDENTE HÉCTOR R. NIEVES Y/O SU COMITÉ DE SUPERVISIÓN A TRAVÉS DE SU PRESIDENTE PABLO ESTRELLA Y/O LA ADMINISTRACIÓN A TRAVÉS DE SU ADMINISTRADORA, FRANCISCA CARRIÓN CALDERÓN, SUS COMPAÑÍAS ASEGURADORAS DESCONOCIDAS DENOMINADAS ALPHA Y/O JURÍDICAS QUE PUEDAN SER REPONSABLES
Demandados-Apelados

Núm. KLAN-07-00676

San Juan, Puerto Rico, a 13 de noviembre de 2007

Panel integrado por su Presidente, el Juez Martínez Torres, la Juez
Cotto Vives y el Juez Miranda De Hostos

Cotto Vives, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Edison Padró Rosado comparece ante nos para solicitarnos que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, el 26 de enero de 2007. En la referida sentencia, el tribunal *a quo* desestimó la demanda presentada por éste. Además, le impuso la obligación de satisfacer $2,000 en concepto de honorarios de abogado a favor de la parte demandada.

Confirmamos la sentencia apelada a tenor con los fundamentos que presentamos a continuación.

### I

El 4 de agosto de 2004, el señor Edison Padró Rosado presentó una demanda por difamación y/o libelo, injurias, calumnias y daños y perjuicios, contra la Cooperativa Gasolinera Choferil Carmelo Carrión, su Junta de Directores a través de su Presidente Héctor R. Nieves y/o su Comité de Supervisión a través de su Presidente, Pablo Estrella y/o la Administración a través de su Administradora, Francisca Carrión Calderón y las compañías aseguradoras que puedan ser responsables.

La parte demandante reclamó haber sufrido daños y perjuicios a consecuencia de un informe, alegadamente difamatorio, que fue presentado por el presidente del Comité de Supervisión a la matrícula de la Cooperativa Choferil Carmelo Carrión Calderón durante la asamblea ordinaria celebrada el 14 de diciembre de 2003. Alegó, además, los siguientes hechos: (1) que en la referida asamblea se circuló y entregó a todos los socios e invitados una copia del informe anual correspondiente a las operaciones de la Cooperativa durante el año 2002-2003; (2) que dentro del contenido del informe anual se incluyó el informe del Comité de Supervisión que era presidido por el señor Pablo Estrella y en el cual, a su vez, se mencionó el nombre del demandante por unas actuaciones de éste durante el año anterior cuando fungió como Presidente de la Junta de Directores de la Cooperativa; (3) que en el referido informe se relató sobre una demanda presentada por un empleado, de nombre Ángel Rivera Jusino, contra la Cooperativa, mientras el demandante fungía como Presidente de la Junta de Directores. En aquel caso se emitió sentencia a favor del empleado y se condenó a la Cooperativa al pago de $5,000 por concepto de días por enfermedad no utilizados. La demanda fue como consecuencia del señor Padró Rosado haberse negado a firmar un cheque de liquidación de días de enfermedad a nombre del empleado-demandante, por la cantidad de $744.29; y (4) que a los miembros de la Junta de Directores y del Comité de Supervisión le constaban que los hechos expuestos en dicho informe eran falsos y que los mismos fueron expuestos con el propósito y la intención maliciosa, premeditada, libelosa e injuriosa de descalificar al demandante para cualquier posición electiva a la cual aspira. De igual forma, el demandante adujo que cuando intentó dirigirse a la asamblea para aclarar los hechos expuestos en el aludido informe, le negaron el derecho a dirigirse a los allí presentes, le apagaron el micrófono y fue objeto de vejámenes.

El 17 de septiembre de 2004, las codemandadas, la Junta de Directores y la señora Francisca Carrión Calderón, contestaron la demanda. Ambos codemandados aceptaron que se celebró la asamblea ordinaria, que en la misma se repartió el informe anual y que en dicho informe se incluyó, a su vez, el informe en el que se hace alusión al demandante. Las restantes alegaciones fueron negadas.

Luego de varios trámites procesales, se celebró la vista en su fondo el 14 de noviembre de 2006. La prueba testifical de la parte demandante consistió del testimonio del propio demandante, el señor Padró Rosado; y de la señora María I. Díaz Bauzá. Por la parte demandada, testificaron el Presidente actual de la Junta de Directores de la Cooperativa, el señor Héctor L. Nieves Rivera; y la ex administradora de la Cooperativa, doña Francisca Carrión. Durante el desfile de la prueba, la parte demandante renunció al testimonio de la señora Díaz, la cual fue puesta a disposición de la parte demandante. No obstante, dicha parte no utilizó a la mencionada testigo.

Concluida la presentación de prueba del demandante, la parte demandada solicitó la desestimación de la demanda al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2. El tribunal se reservó el fallo y continuó con los procedimientos y la presentación de la prueba de la parte demandada.

Como dijimos, el tribunal *a quo* declaró no ha lugar la demanda y, en consecuencia, la desestimó y le impuso a la parte demandante el pago de $2,000 de honorarios de abogado a favor de la parte demandada.

Oportunamente, el señor Padró Rosado presentó una moción para solicitar determinaciones de hechos adicionales a la cual se opuso la codemandada, la Junta de Directores de la Cooperativa. El 10 de abril de 2007, el TPI declaró no ha lugar dicha solicitud.

En desacuerdo con dicha determinación, el señor Padró Rosado acude ante nos mediante el presente recurso en el que alega que erró el TPI al:

*"1. dictar sentencia declarando no ha lugar la demanda y en su consecuencia determinando que la conducta de la parte demandada no era constitutiva de una violación al derecho a la integridad de la parte demandante contra ataque abusivos a su honra y dignidad, conforme a la prueba sometida. La determinación de instancia lo fue en violación del debido procedimiento de ley en cuanto no hizo el balance más racional, justiciero y jurídico de la totalidad de la evidencia.*

*2. imponer una condena de honorarios de abogado a la parte demandante por instar una válida causa de acción la cual el tribunal en su momento declaró no ha lugar en violación al derecho a la integridad de la parte demandante contra ataques abusivos a su honra y dignidad sin tomar en consideración que conforme al debido procedimiento de ley le asistía el derecho a defenderse de las imputaciones maliciosas traídas ante la asamblea de socios de la cooperativa."*

## II

En nuestra jurisdicción, la difamación ha sido definida en el ámbito civil como *"desacreditar a una persona publicando cosas contra su reputación"*. *Ojeda v. El Vocero*, 137 D.P.R. 315, (1994). Dicho término denota una acción torticera genérica que incluye tanto el libelo como la calumnia. Véase, H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, **Publicaciones J.T.S.**, 2da ed. revisada y aumentada, Vol. I, San Juan, 1986, a la pág. 986.

En Puerto Rico, la protección contra expresiones difamatorias proviene de varias fuentes, a saber: la Constitución del Estado Libre Asociado de Puerto Rico, la Ley de 19 de febrero de 1902, según enmendada, conocida como la Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3141 *et. seq.*, y el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. *Jiménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91, (1992); *Acevedo Santiago v. Western Digital Caribe*, 140 D.P.R. 452 (1996). En su aspecto constitucional, las secs. 4 y 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico establecen los parámetros para la reglamentación de la expresión difamatoria. La sec. 4 dispone que *"no se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios."* La sec. 8 protege el derecho a la intimidad de los individuos al establecer que *"toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida*

**Publicaciones JTS presenta dos nuevas obras de Derecho Penal: Derecho Procesal Penal Etapa Investigativa y Derecho Penal Sustantivo**

JTS

# Ernesto L. Chiesa

Ernesto L. Chiesa obtuvo su bachillerato en Artes (Filosofía) en la Universidad de Puerto Rico en 1964, obtuvo una Maestría en Filosofía en la misma institución en 1967. Luego cursó estudios doctorales en Lógica en la Universidad de California en Berkeley. En 1974 obtuvo el grado de Juris Doctor –Magna Cum Laude– en la Escuela de Derecho de la Universidad de Puerto Rico. Ha ocupado diversas posiciones en la Universidad de Puerto Rico desde 1964 hasta el presente, incluyendo Catedrático de la Escuela de Derecho donde dicta cursos de evidencia, derecho penal y procedimiento criminal. Ocupó el puesto de Secretario del Tribunal Supremo desde septiembre de 1976 hasta agosto de 1981. Fue colaborador del Tribunal Supremo en la preparación del Proyecto de Reglas de Evidencia que finalmente fuera aprobado en el 1979. Ha publicado sendos artículos de revistas jurídicas. Ha sido principal colaborador de la publicación JTS® ™ y autor del Análisis Editorial de Práctica Procesal Puertorriqueña – Evidencia y de la obra Derecho Procesal Penal de Puerto Rico y Estados Unidos. Su Obra Magna es el Tratado de Derecho Probatorio, bajo el sello editorial de Publicaciones JTS. El Profesor Chiesa es continuamente citado por el Tribunal Supremo al igual que por el Tribunal de Apelaciones y los Tribunales de Primera Instancia en Puerto Rico. Entre sus múltiples distinciones profesionales se cuentan: Miembro del American Law Institute; Director de la Conferencia Judicial de Puerto Rico (1990-93); Presidente del Comité de Reglas de Evidencia de la Conferencia Judicial de Puerto Rico (1984-88); Miembro del Comité de Procedimiento Criminal y Evidencia (1984-92); Miembro Honorario del Ilustre Colegio de Abogados Penalistas de Bogotá (1994) y Académico Numerario de la Academia Puertorriqueña de Jurisprudencia y Legislación.

Actualmente preside el Comité del Tribunal Supremo que revisa las Reglas de Procedimiento Criminal (con el objetivo de someter a la Asamblea Legislativa unas nuevas reglas) y es miembro de otro Comité del Tribunal Supremo que revisa las Reglas de Evidencia. Fue miembro del Comité del Tribunal Supremo que estuvo a cargo de la Revisión del Manual de Instrucciones al Jurado. Desde hace más de 18 años, el Profesor Chiesa trabaja como asesor del Secretario de Justicia y del Procurador General en materia de Derecho Penal, Derecho Procesal Penal y Evidencia.

# DERECHO PROCESAL PENAL: ETAPA INVESTIGATIVA

Esta obra pretende presentar una exposición del derecho procesal penal en la etapa investigativa, con énfasis en los derechos constitucionales que amparan al ciudadano en esa etapa del procedimiento. Habida cuenta de la primacía de la Carta de Derechos en esta zona, se alude continuamente a la jurisprudencia de la Corte Suprema de los Estados Unidos y a la del Tribunal Supremo de Puerto Rico, que son las fuentes de derecho primarias. Como es harto sabido, los derechos de la persona reconocidos en la Carta de Derechos de la Constitución de los Estados Unidos tienen que ser reconocidos por los gobiernos de los Estados y de Puerto Rico, aunque éstos pueden reconocer garantías adicionales. En el Capítulo I se aborda lo relativo a la aplicación de la Carta de Derechos de la Constitución de los Estados Unidos a Puerto Rico.

En el Capítulo II se expone el derecho que gobierna el interrogatorio de testigos y sospechosos, materia gobernada por las cláusulas del debido proceso de ley, privilegio contra la autoincriminación y asistencia de abogado. Se aborda, además, lo relativo a la determinación de admisibilidad y suficiencia de las declaraciones obtenidas en esa etapa. Aquí, el derecho constitucional es totalmente controlante, con poca regulación estatutaria.

En el Capítulo III se expone el derecho aplicable a los procedimientos de identificación de sospechosos fuera de corte. Se aborda la protección constitucional que brindan el debido proceso de ley y el derecho a asistencia de abogado, y se explica por qué no hay protección bajo el derecho contra la autoincriminación. Se alude también al rol del derecho a la intimidad en esta zona. Por supuesto, se aborda la regulación estatutaria en la Regla 252 de Procedimiento Criminal.

En el Capítulo IV, por mucho el más extenso, se aborda el complicado derecho que rige la protección constitucional contra registros y detenciones irrazonables, tanto bajo la Enmienda Cuarta como bajo la mayor protección que surge de las secciones 1, 8 y 10 de la Carta de Derechos de la Constitución de Puerto Rico. Por supuesto, se considera también la regulación en las Reglas de Procedimiento Criminal, particularmente la Regla 234 que gobierna lo relativo a la moción de supresión de evidencia. Es en este Capítulo que se aborda el derecho constitucional a la intimidad. Se aborda primeramente todo lo relativo a la regla de exclusión en que se traduce la protección constitucional (alcance de la regla de exclusión y la

moción de supresión) y luego se aborda el alcance de la protección constitucional. Esto, a su vez, se divide en las exigencias para una orden judicial de arresto o de registro (warrant clause) y en la exigencia constitucional de razonabilidad para arrestos o registros sin orden judicial. De ahí la necesidad de aludir al derecho que gobierna el arresto sin orden y lo relativo a los distintos registros sin previa orden judicial. También se consideran registros y detenciones particulares, como el "stop and frisk", la detención y registro de vehículos, registros administrativos y otros.

Finalmente, en el Capítulo V se aborda el derecho constitucional contra la autoincriminación. Primeramente se aborda el derecho en general: su alcance, limitaciones, la inmunidad como mecanismo para neutralizar el privilegio, etc. Luego se atiende lo relativo al derecho especial que ampara al ya acusado a no declarar y a que no se hagan inferencias del ejercicio de ese derecho. Aunque esta dimensión del derecho supone ya el inicio de la acción penal (más allá de la etapa investigativa), se incluye para presentar una visión más completa del derecho contra la autoincriminación. En el Capítulo II ya se había abordado el derecho contra la autoincriminación en la zona del interrogatorio de testigos y sospechosos (Miranda y su progenie).

Se advierte que queda fuera de ese libro lo relativo al derecho especial que gobierna la legislación federal especial "antiterrorista", es decir, el Patriot Act y las acciones legislativas y ejecutivas en esta sensitiva zona. Para eso hay que considerar la literatura especializada y esperar por más jurisprudencia de la Corte Suprema que aclare la validez de las limitaciones a los derechos constitucionales de la persona que entraña esa legislación.

Este libro va dirigido a estudiantes, abogados, fiscales y jueces. No hay pretensión alguna más allá de ayudar a éstos a encontrar, y tal vez entender mejor, el derecho positivo que aparentemente gobierna los procesos de investigación criminal tratados en este trabajo. Por supuesto, estamos ante una zona de continuo devenir; se produce mucha jurisprudencia que cambia ese pretendido derecho positivo. De ahí la necesidad de suplementar anualmente este libro para incorporar la jurisprudencia del Tribunal Supremo de Puerto Rico y de la Corte Suprema de los Estados Unidos.

# Lic. Luis E. Chiesa

Luis Ernesto Chiesa Aponte es Profesor Adjunto de Derecho Penal en la Facultad de Derecho de Pace University en White Plains, New York. Obtuvo su Bachillerato en Administración de Empresas y revalidó como Contador Público Autorizado. Luego obtuvo su grado de Juris Doctor (Summa Cum Laude) en la Facultad de Derecho de la Universidad de Puerto Rico. Posteriormente, recibió el grado de Maestría en Derecho (LL.M) de Columbia University. Actualmente se encuentra cursando estudios conducentes al grado de Doctor en las Ciencias Jurídicas (J.S.D.) en Columbia University. Una porción de su tesis doctoral, la cual versa sobre ciertos aspectos debatidos de la teoría de la antijuricidad penal, ha sido aceptada para publicación en el Buffalo Criminal Law Review. Además, ha publicado sendos artículos en las principales revistas jurídicas de Puerto Rico sobre distintos aspectos del derecho penal.

Antes de comenzar sus labores docentes en Pace University, Luis Ernesto Chiesa fue Profesor Adjunto de Derecho Penal en la Facultad de Derecho de la Universidad de Puerto Rico y Oficial Jurídico del Juez Presidente del Tribunal Supremo de Puerto Rico, Hon. Federico Hernández Denton. Durante dicho tiempo, fue asesor del Comité para la Revisión del Manual de Instrucciones al Jurado de Puerto Rico adscrito al Secretariado de la Conferencia Judicial.

La teoría de la responsabilidad penal que sirve de base al Nuevo Código Penal es totalmente distinta a la que inspiró el Código Penal de 1974. A consecuencia de ello, bajo el Nuevo Código Penal es posible aducir una multiplicidad de planteamientos que bajo el Código Penal de 1974 no podían defenderse con seriedad. Ahora, por ejemplo, puede argumentarse que quien no contribuyó de forma significativa a la comisión del delito debe ser castigado mucho menos severamente que los verdaderos "autores" de la ofensa (Arts. 43-45 del Nuevo Código Penal). Esto era insostenible bajo la normativa sobre coautoría que se había adoptado en el viejo código (Art. 35 del Código Penal 1974).

Además, conforme al Artículo 9 del Nuevo Código Penal, el principio de favorabilidad ahora claramente aplica también hasta en los casos en que el convicto está cumpliendo su sentencia. Ello era, cuanto menos, dudoso bajo el anterior código. La figura de la tentativa también sufrió cambios.

Ahora solamente pueden hallarse incurso en tentativa quienes ejecutan el último acto necesario para consumar el delito. Según el viejo código, esto no era un elemento esencial de la tentativa.

De otra parte, a tenor con el Artículo 13 del Nuevo Código Penal, ya no rige en Puerto Rico la doctrina de "interpretación restrictiva" de los estatutos penales. Ahora, distinto a lo que ocurría bajo la normativa desarrollada por el Tribunal Supremo en cuanto a este particular, las leyes criminales pueden interpretarse tanto restrictiva como extensivamente. La única interpretación prohibida es la "analógica" en virtud de la cual se crean judicialmente nuevos delitos o penas.

Para entender cabalmente estos y el resto de los cambios sustanciales que ha sufrido nuestro ordenamiento penal como consecuencia del Nuevo Código, es necesario realizar un análisis comparado de los preceptos contenidos en dicho código. Sólo así puede comprenderse el alcance de las nuevas doctrinas que han sido incorporadas al derecho penal puertorriqueño por medio de este nuevo intento codificatorio. Precisamente ese es el propósito de esta obra.

El análisis que hacemos de la materia equipará al estudiante y al profesional con los conocimientos necesarios para poder sacarle el máximo provecho al Nuevo Código Penal.

Incluimos, además, el texto completo del Nuevo Código Penal con Anotaciones del Lic. Chiesa en relación con la Jurisprudencia Interpretativa del Tribunal Supremo y las enmiendas legislativas que ha sufrido dicho Código. También, se incluye sin costo alguno un DVD que contiene sobre 4,500 págs. de los documentos del historial legislativo del Nuevo Código Penal, que incluyen, entre otros: Los estudios de base, las ponencia de las Vistas Públicas sobre el Código, los Proyectos radicados en el Senado y la Cámara, los Informes de Comisión, el debate y votación final en el Senado y el trámite en la Cámara, el Código Penal y sus enmiendas y las Leyes Complementarias a la Reforma del Código Penal.

*El bosquejo de la obra es el siguiente:*

➤ Introducción

- Breve recuento del proceso que culminó con la aprobación del Nuevo Código Penal.
- Examen de las bases conceptuales que subyacen al Nuevo Código Penal.

➤ Limitaciones Constitucionales al Ejercicio del Poder Punitivo

- Implicaciones del debido proceso de ley para la redacción e interpretación de leyes penales.
- Leyes Ex Post Facto y la Jurisprudencia Reciente Sobre este Particular.
- Proporcionalidad y Castigos Crueles e Inusitados
- Separación de Poderes y el Llamado "Delito Administrativo"
- Los Límites al Poder de Criminalizar Conductas que Impone el Debido Proceso Sustantivo y el Derecho a la Intimidad

➤ Limitaciones Estatutarias al Ejercicio del Poder Punitivo

- El Principio de Legalidad y sus Cuatro Consecuencias
- La Eliminación de la Regla de Interpretación Restrictiva
- El Problema de las Fuentes del Derecho Penal y la Limitada Aplicabilidad del Principio de Legalidad en Puerto Rico
- El Más Robusto Principio de Favorabilidad del Nuevo Código Penal
 » Los Problemas de la "Tercera Ley"
 » Las Leyes Intermedias
 » Las Leyes Temporales como Excepción a Este Principio (Art. 10 del Nuevo Código Penal)
- El Concurso de Leyes y Delitos
 » Concurso Real
 » Concurso Ideal y Medial
 » Concurso Aparente
 » Delito Continuado
 » Delito Masa – ¿Aplica a Puerto Rico?

➤ El Primer Eslabón de la Teoría de la Responsabilidad Penal - El Comportamiento Humano

- Acciones Penalmente Relevantes
- Omisiones Penalmente Relevantes

- La llamada Comisión por Omisión (Art. 19 del Nuevo Código Penal)
- La Posesión como Comportamiento
- Casos Límite – Hipnósis, Sonambulismo, Eutanasia

➤ El Segundo Eslabón de la Teoría de la Responsabilidad Penal – La Antijuricidad

- Elementos Objetivos de la Ofensa
- Causalidad y la Nueva Figura de "imputación objetiva" y "riesgo permitido" (Art. 25).
- Elementos Subjetivos – Dolo Eventual y "Temeridad" o "Recklessness".
- Los Elementos Subjetivos Distintos a la Intención y su Relación con la Eximente de Intoxicación Voluntaria
- El Error de Tipo del Art. 19 como una Forma de Excluir la Intención.
- Las Defensas de Justificación en Puerto Rico – La Nueva y Más Restrictiva Defensa de Estado de Necesidad

➤ El Tercer Eslabón de la Teoría de la Responsabilidad Penal en Puerto Rico – La Punibilidad

- El Mayor Alcance de la Eximente de Coacción
- La Nueva Defensa de Temor Insuperable
- Las Defensas No-Exculpatorias y el Entrampamiento

INCLUYE CD QUE CONTIENE SOBRE 500 PAGS. DE LOS DOCUMENTOS

DEL HISTORIAL LEGISLATIVO DEL NUEVO CÓDIGO PENAL

Derecho Procesal Penal: Etapa Investigativa y Derecho Penal Sustantivo

Publicaciones JTS presenta dos nuevas obras de Derecho Penal:

PO BOX 9024120
SAN JUAN, P.R. 00902-4120
TEL. 721-0200

PRSRT STD
U.S. POSTAGE
PAID
SAN JUAN, P.R.
PERMIT NO. 1175

P.O. Box 9024120
San Juan, P.R. 00902-4120
Tel. 721-0200 Fax. 721-0205
www.pub-jts.com

Sres: Favor enviarme un ejemplar de su nuevo libro: Fecha _____

___ Derecho Procesal Penal: Etapa Investigativa (Prof. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Derecho Penal Sustantivo (Lic. L. E. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Ambos libros (un ahorro de $50.00) - $150.00 + $6.00 S/H = $156.00

Envíese a Lcdo(a). _____

Dirección _____

_____ Zip Code _____

Tel: _____ Fax _____ E mail _____

Forma de pago: ___ Adjunto cheque por $ _____ pagadero a Publicaciones JTS.

Cárguese el importe de esta orden ($ _____) a mi tarjeta de crédito: ___ AX ___ MC ___ VISA

Núm. de tarjeta _____ Fecha exp. _____ Firma _____

Autorizo a Publicaciones JTS a renovar automáticamente estas suscripciones a su aniversario (12 meses calendario).
De no desear la renovación enviaré cancelación escrita a Publicaciones JTS.

*privada o familiar.*" Ésta es la fuente primaria de protección contra expresiones difamatorias.

En el aspecto estatutario, la Asamblea Legislativa adoptó la Ley de Libelo y Calumnia, *supra*, la cual ofrece protección contra injurias y permite llevar una acción de daños y perjuicios por libelo y calumnia. Pero ésta sólo sobrevive en tanto y en cuanto sea compatible con la Constitución del Estado Libre Asociado de Puerto Rico. *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991); *Clavell v. El Vocero*, 115 D.P.R. 685 (1984).

La Ley de Libelo y Calumnia, *supra*, establece una acción civil por daños y perjuicios ocasionados por libelo y calumnia. Se diferencia de la acción en daños tradicional que dispone el Art. 1802 de nuestro Código Civil, *supra*, en tanto pretende proveer compensación por aquellos daños a la reputación y la pérdida del buen nombre del agraviado. *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994). No se dirige al resarcimiento por otros tipos de daños, tales como las angustias mentales. *Id.*

La acción de daños y perjuicios bajo el Art. 1802, *supra*, es más abarcadora que la acción estatuida en la Ley de Libelo y Calumnia, *supra*, ya que contempla el resarcimiento por los daños y angustias mentales y morales que hayan sido causadas por la expresión difamatoria. *Soc. de Gananciales v. El Vocero de P.R.*, *supra*. La sec. 3 de la referida ley define calumnia como aquella publicación falsa o ilegal mediante la cual se le imputa a una persona la comisión de un delito, o que tienda a perjudicar a una persona en su oficina o profesión, comercio o negocios, o que como consecuencia natural le cause daños reales y efectivos. 32 L.P.R.A. sec. 3143. Por otro lado, el libelo consiste de una difamación maliciosa que se hace de forma pública, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, resultante en una privación de la estima y confianza social, le perjudica en sus negocios, o le desacredita, menosprecia o deshonra. Sec. 2 de La Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3142.

El estándar de cuidado utilizado para evaluar una acción de difamación, tanto de libelo como calumnia, depende de si el perjudicado por la expresión difamatoria es una figura pública o una persona privada. *González Martínez v. López*, 118 D.P.R. 190 (1987). Ello está predicado en que la figura pública goza de un acceso mayor a los medios de comunicación para refutar la publicación difamatoria y contrarrestar su efecto y, además, se asume que la figura pública se ha expuesto voluntariamente al riesgo de un juicio más riguroso por el público. Sin embargo, no así la persona privada, quien no tiene las mismas ventajas para aclarar de forma generalizada cualquier aseveración falsa sobre sí mismo.

Cuando se trata de un caso de daños y perjuicios por calumnia de una persona privada, el promovente de la acción debe establecer: (1) que se trata de información falsa sobre su persona; (2) tal información se publicó oralmente; (3) la expresión se hizo de manera negligente; y (4) se sufrió daño a causa de ésta. *Acevedo Santiago v. Western Digital Caribe, Inc.*, *supra*; *Villanueva v. Hernández Class*, *supra*. El grado de negligencia exigido es el dispuesto por el Art. 1802 del Código Civil, *supra*, a saber, el no prever o precaver las consecuencias lógicas de una acción u omisión que una persona prudente hubiese previsto.

A su vez, nuestro Tribunal Supremo ha reconocido que *"para prevalecer en una acción por difamación, el demandante no sólo debe probar que cierta información publicada era de contenido difamatorio, sino que debe poder hacer la identificación de sí mismo como la persona difamada. Ningún escrito puede considerarse como libeloso a menos que se refleje sobre una persona en particular."* *Soc. de Gananciales v. El Vocero de P.R.*, *supra*, a la pág. 129. Ello ha sido reconocido en el derecho común como la doctrina de *"of and concerning the plaintiff."* *Id.* a la pág. 128. Como consecuencia, sólo le ha sido reconocido el derecho a reclamar resarcimiento por daños y perjuicios causados por una expresión difamatoria a aquella persona que ha sido objeto directo de críticas. *Id.*

## III
En su primer señalamiento de error, el apelante alega que incidió el tribunal *a quo* al declarar no ha lugar la

demanda y, en su consecuencia, determinar que la conducta de la parte demandada no era constitutiva de una violación al derecho a la integridad de la parte demandante y de ataques abusivos a su honra y dignidad. Argumenta que el hecho de haber discutido el informe del Comité de Supervisión sin haberle dado oportunidad al demandante de defenderse de unos hechos que alegadamente no son ciertos, tuvo el efecto de exacerbar los ánimos de los socios en su contra.

En el caso de autos, la alegada conducta difamatoria ocurrió al exponer un informe del Comité de Supervisión a los socios de la Cooperativa durante la celebración de una asamblea anual de dicho organismo. El informe en cuestión recogía la sentencia emitida por el Tribunal de Primera Instancia, Sala de Río Grande, en el caso de *Angel Rivera Jusino v. Cooperativa Gasolinera Choferil*, civil núm. CD-03-37, sobre despido injustificado, etc., que fue presentado mientras el demandante se desempeñaba como presidente de la Junta de Directores de la Cooperativa.

Del expediente ante nos, surge que la información vertida en la reunión anual de la Cooperativa se hizo a tenor con la facultad que le confiere el Art. 16.2 de la Ley 239 de 1 de septiembre de 2004, 5 L.P.R.A. 4381 *et seq.* —también conocida como Ley General de Sociedades Cooperativas— al Comité de Supervisión de las cooperativas.

El referido artículo, específicamente, dispone lo siguiente:

*"§480. Comité de Supervisión—Obligaciones y Facultades*

*El Comité de Supervisión tendrá las siguientes obligaciones y facultades:*

*(a) ...*

*[...]*

*(h) estar pendiente del curso de las acciones judiciales de que la Cooperativa sea parte;*

*(i) rendir a la Junta de Directores un informe escrito de los exámenes que realicen a la cooperativa, no más tarde de las treinta (30) días siguientes a la fecha en que concluya el mismo;*

*(j) rendir un informe escrito a la asamblea general y al Inspector de Cooperativas, sobre la labor realizada durante el año, entendiéndose que el comité no deberá pronunciarse sobre la efectividad o eficiencia de las actuaciones administrativas de la Junta. El Comité de Supervisión presentará y discutirá este informe con la Junta no más tarde de los treinta (30) días anteriores a la celebración de dicha asamblea;*

*[...]"*. 5 L.P.R.A. sec. 4480.

El propósito de la divulgación del mencionado informe fue darle cumplimiento a las disposiciones de la citada ley y cumplir con la obligación de mantener a los socios informados sobre el curso de las acciones legales en las cuales la Cooperativa haya sido parte. El informe meramente se limitó a informar el resultado del caso, o sea, el contenido de la sentencia emitida por el Tribunal de Primera Instancia en el caso civil en el que se hizo alusión al apelante. Sancionar la conducta del Comité de Supervisión de la Cooperativa sería impedir el cumplimiento de dicho organismo con la Ley 239, *supra*. De ninguna forma, lo revelado mediante el informe constituye imputación alguna de conducta deshonesta o difamatoria contra el demandante-apelante; meramente recoge el dictamen de un foro judicial, el cual constituye un asunto que le compete conocer a los socios de la Cooperativa.

Las expresiones vertidas por los demandados en el informe leído en la asamblea anual y recogidas en una sentencia judicial de ningún modo constituyen expresiones difamatorias o un ataque personal a la honra, integridad personal e intimidad del apelante.

En resumen, un estudio del expediente ante nuestra consideración, incluyendo la transcripción de la prueba oral, demuestra que las determinaciones de hechos y las conclusiones de derecho formuladas por el tribunal de instancia se basan en los testimonios vertidos durante la vista en su fondo. Es norma reiterada que los tribunales apelativos no intervendremos con la apreciación de la prueba y la adjudicación de credibilidad del foro de instancia, a menos que se demuestre que dicho foro incurrió en error manifiesto, pasión, prejuicio o parcialidad. *S.L.G. Piovanetti v. E.L.A.*, 161 D.P.R. ___ (2004), **2004 J.T.S. 55**; *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84 (2000). El apelante no ha demostrado de forma fehaciente que el foro apelado actuó de forma arbitraria o ilegal, más allá de meras alegaciones sobre manifestaciones libelosas y calumniosas, las cuales no fueron sustentadas. No nos corresponde intervenir con las determinaciones de hechos del tribunal cuando fue éste quien observó el comportamiento de los testigos, su manera de declarar, sus gestos y actitudes y, en general, su conducta al prestar la declaración. *Moreda Toledo v. Rosselli*, 150 D.P.R. 473 (2000). Máxime cuando éstas representan un balance racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Maryland Casualty Co. v. Quick Const. Corp.*, 90 D.P.R. 329 (1964).

En cuanto al apelante, resolvemos que éste no desfiló prueba para demostrar que se divulgó información que resultara difamatoria en su contra. Por tanto, concluimos que el foro *a quo* actuó correctamente al desestimar la demanda presentada por el apelante. Por consiguiente, sostenemos que el primer error imputado no se cometió.

## IV

En su segundo señalamiento de error, el apelante impugna la imposición del pago de $2,000 de honorarios de abogado.

En cuanto a la imposición de honorarios por temeridad, es necesario indicar que la misma es discrecional. *Raluan Corp. v. Feliciano,* 111 D.P.R. 598 (1981). No obstante, la Regla 44.1(d) de Procedimiento Civil, 32 L. P.R.A., Ap. III, R. 44.1, es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Determinada la existencia de temeridad, la condena de honorarios es imperativa. Una partida de honorarios de abogado concedida por un Tribunal de Primera Instancia no se variará en apelación a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez Anglada v. Club Cala de Palmas*, 123 D.P.R. 339 (1989).

En el caso ante nuestra consideración, no encontramos que el foro *a quo* haya abusado de su discreción al imponerle al señor Padró Rosado el pago de $2,000 por concepto de honorarios de abogado por temeridad. Siendo así, concluimos que el segundo error apuntado tampoco fue cometido.

## V

Atendidos los fundamentos que hemos consignado, confirmamos la sentencia apelada.

Lo ordenó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones